## BEDWELL *v.* EMPLOYMENT SECURITY COMMISSION.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS
—ISSUES OF FACT—COURTS.

It is not within the province of either the Supreme Court or the circuit court to determine issues of fact when reviewing determinations by the appeal board of the employment security commission as to disqualification for benefits of claimants for unemployment compensation (CLS 1956, § 421.29, subd [1] [b]).

2. SAME—FINDING OF APPEAL BOARD—EVIDENCE—COURTS.

The finding of the appeal board of the employment security commission that there was a labor dispute and that it caused the unemployment for which claimants sought compensation, being supported by evidence on record, was not subject to reversal by the circuit court upon review by certiorari accorded by statute (CLS 1956, § 421.29, subd [1][b]).

3. SAME—LEATHER MANUFACTURER—LABOR DISPUTE—FINDING OF APPEAL BOARD—EVIDENCE.

Testimony of defendant leather manufacturer's plant manager that layoffs of employees were made only to prevent loss through spoilage or obsolescence and not to reduce inventory at plant where the fact that there was a labor dispute was conceded, supported finding of appeal board of the employment security commission that the unemployment of claimants was due to labor dispute (CLS 1956, § 421.29, subd [1][b]).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 49.

[3, 4] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.

Construction and application of provisions for disqualification from unemployment benefits because of labor disputes. 28 ALR 2d 287.

4. Same—Period of Layoff—Labor Dispute—Evidence—Disquali-
   fication for Benefits.

> The fact that there was evidence that the time necessary to
> process materials used in the manufacture of leather to a stage
> where it would not spoil was less than the period involved in
> the layoff imposed by defendant employer did not make er-
> roneous the determination of the appeal board of the employ-
> ment security commission that the unemployment for which
> claimants sought benefits was due to labor dispute disqualifying
> them therefor as against the great weight of the evidence,
> where there was evidence that union had given a 60-day notice
> that strike would occur upon termination of existing collective
> bargaining contract and various efforts to obtain extensions of
> time were unavailing prior to employer's order to lay off em-
> ployees as successive steps in processing materials were com-
> pleted to prevent spoilage and prepare for shipment (CLS
> 1956, § 421.29, subd [1][b]).

5. Same—Consolidated Claims—Appeal as of Right.

> Appeal of employer, taken as of right and without leave, from
> judgment of circuit court in consolidated cases of claimants
> for unemployment compensation *held*, proper, notwithstanding
> no one of the claims amounted to as much as $500, but in the
> aggregate totaled much more than that sum, in view of the
> past practice in such cases and present court rule provision
> in recognition thereof (Court Rule No 60, § 1, as amended in
> 1961).

6. Same—Costs.

> No costs are allowed on appeal from judgment in favor of claim-
> ants for unemployment compensation, where reversal of judg-
> ment of circuit court results in affirmance of determination of
> appeal board of employment security commission and no costs
> had been requested by appellant.

Appeal from Muskegon; Fox (Noel P.), J. Sub-
mitted April 12, 1962. (Docket No. 66, Calendar
No. 49,241.) Decided September 7, 1962.

Jack D. Bedwell and others presented their claims
for unemployment compensation which were denied
with finding of disqualification because of labor dis-
pute. Upon certiorari joining Michigan Employ-
ment Security Commission, its Appeal Board, and

the employer, Whitehall Leather Company, Division of General Shoe Corporation, as defendants, circuit court set aside order of commission. Defendant employer appeals. Reversed, affirming the disqualifying order of the commission.

*Marcus, McCroskey, Finucan & Libner* (*Paul A. Williams,* of counsel), for plaintiffs.

*Beaumont, Smith & Harris* (*Frank E. Cooper,* of counsel) and *Sessions & Barlow,* for defendant Whitehall Leather Company.

DETHMERS, J. This is an unemployment compensation case. The ultimate issue is whether the facts in the case bring it within the disqualification-for-benefits provisions of CLS 1956, § 421.29, subd (1) (b) (Stat Ann 1960 Rev § 17.531, subd [1] [b]), applicable to unemployment due to a stoppage of work existing because of a labor dispute. The appeal board found that the stoppage of work was caused by a labor dispute, but the circuit court, on certiorari, held that it was caused by the defendant employer's desire to reduce its production and the inventory of its product in process of production and that the decision of the appeal board was against the great weight of the evidence. On defendants' appeal here the question is whether the circuit court was correct in so holding with respect to the decision of the appeal board.

Defendant employer, hereinafter called the defendant, is engaged in the manufacture of leather, which involves several successive processing steps. It is a wholly-owned subsidiary of General Shoe Corporation, which buys all of its production.

On April 8, 1957, the union representing defendant's employees served a 60-day notice on defendant that the collective bargaining contract between them

would terminate on June 8, 1957. The contract contained the following clause:

"(C) Spoilage & Property Protection.

"(1) Should a strike or work stoppage occur, all perishable stock in process shall be worked into a nonperishable state, which means working the stock into crust. Necessary care shall be given the skins and hides on the company's premises to prevent spoilage; and maintenance requirements for the proper operation of the tannery are hereby guaranteed to the company."

Defendant claimed that if a strike occurred and all work stopped at once, with hides in the several stages of processing, those not completed would be subject to putrefaction and obsolescence, with a threatened potential loss to defendant of $122,850. At a meeting between union and company officials on April 26th defendant so informed the union and requested that an agreement be made that the necessary employees would continue to work past the June 8th strike deadline in order to finish up all work in process and thus avoid such loss. This the union refused, stating that, unless a new contract were entered into by June 7th, a strike would commence at midnight of that date. Defendant advised that, unless such agreement were made, it would be necessary for it to discontinue the initial step in the leather processing with consequent layoffs of employees engaged in that step, not later than May 20th, with similar subsequent, progressive discontinuances and layoffs in the successive steps, in order to insure that there would be no unprocessed or unfinished hides subject to spoilage or obsolescence left, if or when a strike should commence and operations cease on June 8th. Later, defendant approached the union again with a proposal for such agreement and advised that, if not agreed upon,

initial layoffs would have to begin on May 6th to make certain that everything in process would be completed by June 8th. The proposed agreement was not approved by the union.

The initial layoffs commenced, accordingly, on May 6th and followed progressively in the succeeding steps. On June 6th a new contract was entered into and a strike averted. The employees then were called back to work, commencing on June 10th in the initial stage and thereafter, step by step, in the remaining stages.

Claims for compensation are for the period of the indicated temporary layoffs.

In its decision the appeal board said:

"In the instant case, the claimant, through the union, caused the collective bargaining agreement to be terminated on midnight, June 7, 1957, and refused the employer's request to put into effect an extension agreement that would have continued operations after June 7, 1957. Because of this action on the part of the union, the employer was compelled to take the action it did on May 6, 1957, by dropping the 'soaking' operation.

"The record establishes that on the basis of past experience it would take between 18-1/2 and 19-1/2 days to bring the leather to the crust stage where spoilage through putrefaction could be averted temporarily and between 24 or 25 days to finish the goods in process to a point where they would be ready for shipment. The employer concluded that because of the work in process and the threatened work stoppage it was necessary to discontinue 'soaks' on May 6th. The employer further contended that had it not been for the labor dispute the work stoppage of May 6th would not have occurred. In support of this contention the employer's unrebutted testimony established that it had not wanted to discontinue 'soaks'; that several attempts were made to extend the primary contract in order to continue the

'soak' operation up to the termination date of the primary contract; that there was never a problem of being unable to sell its inventory, so the large inventory at the time of negotiations was of little concern; that over the past 16 years there had never been a question of the parent company not taking all the production of the employer; that general economic conditions were such as to make the employer confident that the arrangement would be continued; and, that having failed in getting an agreement to extend production beyond June 7, 1957, the employer, fearful that it would lose over $100,000 in leather spoilage if it continued full production to June 7, 1957, discontinued the initial processing on May 6, 1957. * * * .

"The union advised the employer on April 26, 1957, that it desired to reopen the collective bargaining agreement and negotiate several issues. By this action, the union caused the primary collective bargaining contract to be terminated as of midnight, June 7, 1957, and required the employer to negotiate a new contract prior to that date or the plant would be struck and pickets posted. Therefore, as of April 26, 1957, a labor dispute existed in the establishment of the employer and the claimants were directly interested in the labor dispute.

"This appeal board is of the opinion that the employer ceased the initial processing operation on May 6, 1957, because the union refused to approve an extension agreement protecting the employer against possible spoilage of its work in process and that it resumed operations as soon as possible following the settlement of the labor dispute and recalled its employees as each succeeding operation was resumed following the 'soak' operation. In taking the action of suspending the 'soak' operation, the employer did so because of the statements of the union that the plant would be closed down and pickets placed around the plant if no agreement was worked out by midnight, June 7, 1957. The employer had

the right to rely on these statements and protect
its property in an orderly fashion."

The circuit court, in reversing the appeal board,
seized upon 1 statement in the testimony of defend-
ant's plant manager that on April 26th the inven-
tory of sides of leather in a certain stage of proc-
essing was higher than normally carried. From this,
the court concluded that layoffs by defendant were
occasioned by the desire to reduce that inventory.
Such conclusion is, of course, contrary to that drawn
by the appeal board from the fact that defendant
sought to persuade the union to agree to finish, after
the strike deadline, all hides in process at that time,
which discloses a desire not to reduce but to con-
tinue production. However, it is neither for us nor
the circuit court to determine the issues of fact.
That there was a labor dispute was conceded in
testimony by the union's president, who further testi-
fied that the unemployment was brought about by
layoffs in anticipation of a possible strike, and was
caused by the union opening the contract. Defend-
ant's plant manager positively testified that the lay-
offs were only to prevent loss through spoilage or
obsolescence and not to reduce inventory. The find-
ing of the appeal board that there was a labor dis-
pute and that it caused the unemployment is sup-
ported by such evidence and that recited in its
opinion as above quoted. It was error for the cir-
cuit court to make its own appraisal of the testi-
mony and to pick and choose from the testimony and
inferences therefrom in order to reach a holding
that the decision of the appeal board was against
the great weight of the evidence. *Miller* v. *F. W.
Woolworth Company,* 359 Mich 342; *Federal Trade
Commission* v. *Algoma Lumber Company,* 291 US
67 (54 S Ct 315, 78 L ed 655). As said in *Peaden*
v. *Employment Security Commission,* 355 Mich 613,
631:

"Our function is exhausted once it is found, as we have found, that the evidentiary record permitted the appeal board to draw such conclusion."

Point is made that the old labor contract had provided, with respect to spoilage and property protection in case of strike, only for working perishable stock in process into crust, whereas defendant, during negotiations, asked that the union agree to work stock to completion, ready for shipment. Also, it is argued, although the appeal board accepted express testimony for defendant to the contrary, that the time necessary for working stock from commencement to crust was less than the period from May 6th, when layoffs commenced, to June 7th, when the old contract terminated. Neither point, if correct, rebuts the appeal board finding that a labor dispute existed and that it caused the layoffs and unemployment. We hold that the decision of the appeal board that plaintiff's unemployment was due to a stoppage of work caused by a labor dispute was not against the great weight of the evidence. It should have been affirmed accordingly.

. A large number of defendant's employees had claims like that of the named plaintiff herein. No one of the claims amounted to as much as $500, but in the aggregate they totaled far in excess of that amount. The cases of all the claimants were, by stipulation and with court approval, consolidated and treated as one case before the circuit court and disposed of by a single order in that court, which thereafter certified, for purposes of taking this appeal, that more than $500 was involved. Defendant took its appeal here as of right without leave granted. Plaintiff moved this Court to dismiss the appeal on the ground that leave to appeal was required. The motion to dismiss was denied, with directions that the question be briefed in connection with submission of the questions raised on appeal. In a long

list of cases, extending at least from *Chrysler Corp.* v. *Smith,* 297 Mich 438 (135 ALR 900), to *Linski* v. *Employment Security Commission,* 358 Mich 239, this Court has considered appeals taken as of right, without leave, in unemployment compensation cases. In *Lee* v. *Employment Security Commission,* 346 Mich 171, Mr. Justice BLACK took note of this fact and existence of an apparent uncertainty as to required practice. Accordingly, he concluded to accept the claim of appeal therein as a duly granted application for leave to appeal. Other members of the Court evidently accepted the appeal as of right as properly taken. I see no reason for any other course here. Reference is made to the subsequent adoption by this Court, effective December 1, 1961, after appeal was taken in this case, of the amendment to Court Rule No 60, § 1 (1945),* expressly permitting taking of appeals as of right in this kind of case. It is urged that this represents recognition that the procedure theretofore was otherwise. We think rather that the amendment was in recognition of and intended to clarify what had long been the practice, right or wrong, in these cases. We consider the appeal properly before us.

The order of the circuit court is reversed, and the decision of the appeal board, holding the claimants disqualified for benefits for the reason that their unemployment was due to a stoppage of work existing because of a labor dispute, is affirmed. No costs, none having been requested.

CARR, C. J., and KELLY, BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred with DETHMERS, J.

KAVANAGH, J., concurred in result.

* See 364 Mich xiv.—REPORTER.