EMPLOYMENT SECURITY COMMISSION *v.*
GENERAL MOTORS CORPORATION

OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION — "LAYOFF" — DEFINITION —
STATUTES.

A "layoff" for purposes of back-to-work benefits under the
employment security act does not encompass a discharge for
unsatisfactory job performance; a "layoff" does not include
a dismissal, a discharge, a permanent termination, or a final
release from employment (MCLA § 421.27[c][2]).

2. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—"LAY-
OFF"—STATUTES.

An unemployment compensation claimant, whose employment was
terminated for unsatisfactory job performance, is not entitled
to back-to-work benefits, because the termination of his employ-
ment is not a layoff (MCLA § 421.27[c][2]).

3. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—"LAY-
OFF"—DEFINITION.

A layoff, for purposes of back-to-work benefits under the employ-
ment security act, contemplates a period during which the
claimant is laid-off, or temporarily dismissed, for lack of
work and does not include a claimant's discharge, even if
the discharge is under non-disqualifying circumstances (MCLA
§ 421.27[c][2]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 34–38.
Circumstances of leaving employment, availability for work, or
nature of excuse for refusing re-employment, as affecting right
to social security or unemployment compensation, 158 ALR 396
s. 165 ALR 1382.
[2] Work-connected inefficiency or negligence as "misconduct" bar-
ring unemployment compensation, 26 ALR3d 1356.

4. Unemployment Compensation—Back-To-Work Benefits—Statute.

Payment of the back-to-work benefit under the employment security act is not authorized to all involuntarily-terminated employees (MCLA § 421.27[c][2]).

5. Unemployment Compensation—Back-To-Work Benefit—"Layoff"—Construction.

The word "layoff", as used in the back-to-work benefit provision of the employment security act, must be given its ordinary meaning in the absence of evidence that the word was inadvertently used by the legislature or that the legislature intended some special meaning to be used; a special meaning will not be imputed even though the act may appear to the court to be illogical or inconsistent (MCLA § 421.27[c][2]).

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 February 5, 1971, at Detroit. (Docket No. 9454.) Decided April 23, 1971.

Richard W. Foster presented his claim for unemployment compensation against General Motors Corporation, claimant's former employer. Benefits denied by the Employment Security Commission Appeal Board. The Employment Security Commission appealed to the circuit court. Judgment for plaintiff commission. Defendant appeals. Reversed and Employment Security Commission Appeal Board's denial of payment reinstated.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Felix E. League,* Assistant Attorney General, for plaintiff.

*A. R. Wermuth,* for defendant.

Before: J. H. Gillis, P. J., and R. B. Burns and Levin, JJ.

J. H. GILLIS, P. J.   This is an appeal from a deci-
sion of the Genesee county circuit court,[1] where it
was held that a back-to-work payment under § 27
(c)(2) of the Michigan Employment Security Act,
MCLA § 421.27(c)(2) (Stat Ann 1968 Rev § 17.529
[c][2]), is due a claimant whose termination from
employment resulted from "unsatisfactory job per-
formance."

Briefly, the undisputed facts are that, after two
years of employment with Chevrolet Division of
General Motors Corporation, Richard W. Foster's
employment was terminated for "unsatisfactory job
performance" on February 29, 1968.   He filed for,
and received, unemployment benefits based on the
Michigan Employment Security Commission's deter-
mination that his separation from employment was
not a disqualifying one under the terms of the act
as it was for reasons other than misconduct con-
nected with his work.   On April 1, 1968, the claimant
obtained employment, whereupon he filed for and
received a back-to-work payment from the Michigan
Employment Security Commission pursuant to § 27
(c)(2), MCLA § 421.27(c)(2), *supra,* of the Michi-
gan Employment Security Act.   Though the Chev-
rolet Division of the General Motors Corporation
never opposed payment of weekly unemployment
benefits, the company timely protested the claim-
ant's receipt of the back-to-work payment under
§ 27(c)(2).

[1] On June 25, 1968 the Michigan Employment Security Commission
reaffirmed its original determination that the claimant was eligible to
receive a back-to-work payment; thereafter, on August 1, 1968 the
referee of the commission affirmed the decision of the commission.
The appeal board, however, on December 16, 1968, reversed the deci-
sion of the referee and held claimant not to be entitled to a back-
to-work payment.   The commission then appealed the appeal board's
decision under the provisions of § 38 of the act.   The circuit court,
on March 20, 1970, rendered its decision reversing the opinion of
the appeal board and adopting that of the commission and referee.

Section 27(c)(2) of the Michigan Employment Security Act states that:

"When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in full-time work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid, for the most recent week in such period for which benefits are payable or were paid to him or for which he was entitled to credit for a waiting week, an amount equal to his currently applicable weekly benefit rate in addition to any benefits otherwise payable or paid to him for such week. Benefits shall be payable under this paragraph only for 1 week in an individual's benefit year and only to the extent that the individual is otherwise entitled to benefits under subsection (d) of this section. An individual shall be deemed to be engaged in full-time work for an employing unit if he has earned with such employing unit within any period of 7 consecutive days commencing within such 13 week period an amount equal to his currently applicable weekly benefit rate. To be eligible for benefits under this subsection, an individual shall file therefor within 13 calendar weeks after the end of the week for which benefits are payable in accordance with this subsection."

Thus, the narrow issue before us requires an application and interpretation of undisputed facts in determining what is meant by a "layoff" as that word is used in the above-quoted section. That both the circuit court and this Court have jurisdic-

tion over this issue is evident in § 38 of the Act,[2] MCLA § 421.38 (Stat Ann 1968 Rev § 17.540). Interpretation of legislative intent in enacting a statute is a judicial function;[3] it is the decision of the appeal board[4] which must be analyzed to determine if it had a reasonable basis in fact and law. *NLRB* v. *Hearst Publications, Inc.* (1944), 322 US 111, 131 (64 S Ct 851, 861, 88 L Ed 1170, 1185).

Words are to be interpreted according to their ordinary usage and in the sense in which they are understood when employed in common language. See *Reetz* v. *Schemansky* (1937), 278 Mich 626; *American Telephone & Telegraph Company* v. *Employment Security Commission* (1965), 376 Mich 271; *Ford Motor Co.* v. *Unemployment Compensation Commission* (1947), 316 Mich 468. It should not be necessary to restate here that, "We eschew the insertion of words in statutes unless necessary to give intelligible meaning or to prevent absurdity,

---

[2] Section 38 of the Michigan Employment Security Act states: "the circuit court of the county in which the claimant resides, or, if no claimant is a party to the case, the circuit court of the county in which the employer's principal place of business in Michigan is located, or in any case the circuit court for the county of Ingham, shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final order or decision of said appeal board, and to make such further orders in respect thereto as justice may require, but said court may reverse such order or decision only if it finds that such order or decision is contrary to law or is not supported by competent, material and substantial evidence on the whole record. Application for such review must be made within 15 days after mailing of a copy of the order or decision by any method permissible under the rules and practices of the circuit courts of this state. The commission shall be deemed to be a party to any judicial action involving any order or decision of the appeal board. An appeal may be had from the decision of said circuit court in the same manner as provided by the laws of this state with respect to appeals from circuit courts." MCLA § 421.38 (Stat Ann 1968 Rev § 17.540).

[3] *Paye* v. *City of Grosse Pointe* (1937), 279 Mich 254; *Bolles* v. *Employment Security Commission* (1960), 361 Mich 378; *McAnallen* v. *Employment Security Commission* (1970), 26 Mich App 621.

[4] *Peaden* v. *Employment Security Commission* (1959), 355 Mich 613; *Bedwell* v. *Employment Security Commission* (1962), 367 Mich 415.

without regard to our own estimate of the wisdom of the legislation" *Great Lakes Steel Corporation* v. *Employment Security Commission* (1967), 6 Mich App 656, 661, 662, *affirmed* 381 Mich 249. Since the Michigan Supreme Court has ruled that when the Legislature uses a certain phrase or word in a statute, the Court must "presume it was used in its normally accepted meaning  *  *  *  ", *American Telephone & Telegraph Company, supra,* p 279, we look to the ordinary meaning of the word "layoff".

In this regard, we begin by saying that a "layoff" is not; it is not a dismissal, a discharge, a permanent termination or, necessarily, a final release from employment.[5]  The United States Bureau of Labor Statistics, *Handbook of Labor Statistics,* 1936, pp 803, 804, states that:

"A 'layoff' is a termination of employment at the will of the employer, without prejudice to the worker. Layoffs may be due to lack of orders, technical changes, or the failure of flow of parts or materials to the job, as needed."

The United States Supreme Court touched upon this issue in the case of *Fishgold* v. *Sullivan Drydock & Repair Corporation* (1945), 328 US 275, 286, 287 (66 S Ct 1105, 1112, 90 L Ed 1230, 1241), and stated:

"Discharge normally means termination of the employment relationship or loss of a position. In common parlance and in industrial parlance a person who has been laid off by operation of a seniority system and put on a waiting list for reassignment would hardly be considered as having been 'discharged'.  *  *  *  A furlough is not considered

[5] Random House Dictionary of English Language (1966); Webster's Third New International Dictionary (1966); Oxford English Dictionary (Supp); Funk and Wagnales New Standard Dictionary (1945).

a discharge. It is a form of lay-off. So is a leave of absence. And whether either results from unilateral action by the employer or otherwise, consequences are quite different from termination of the employment relationship."

The Missouri Supreme Court in the case of *Irwin* v. *Globe-Democrat Publishing Company* (1963), 368 SW2d 452, 455, stated that the term "layoff" is to be specifically defined:

"A 'layoff', as distinguished from a discharge, contemplates a period during which a working man is temporarily dismissed, *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 2 Cir., 154 F2d 785, 788, and it also refers to that suspension of work or employment during a part or season of the year when business activity is partly or completely suspended [citing cases]. An employee 'laid off' does not have his employment status completely and finally terminated. He ordinarily is entitled to re-employment when the temporary situation calling for the layoff has been corrected or eliminated."

Therefore, we conclude, that the definition of the word "layoff" does not encompass a discharge for "unsatisfactory job performance." Our analysis of this matter convinces us that there was a "basis in law" for the Michigan Employment Security Commission Appeal Board to hold:

"The entitlement to a back-to-work payment under sub-section 27(c)(2) requires that a claimant be laid off for lack of work and is not applicable in circumstances wherein a claimant is discharged even if his discharge is found to be under nondisqualifying circumstances."[6]

The decision of the Genesee County Circuit Court is, therefore, reversed; the decision of the Appeal

---

[6] Rendered December 16, 1968.

Board of the Michigan Employment Security Commission is reinstated.

R. B. Burns, J., concurred.

Levin, J. (*concurring*). The Michigan Employment Security Commission contends that a discharge should be treated the same as a "layoff" for an indefinite period for the purpose of determining entitlement to the "back-to-work" payment. The commission relies on its interpretation in its manual in support of its contention:

"For the purpose of the back-to-work payments only, the individual shall be deemed to have been 'laid off' by an employing unit if his separation resulted from an action of the employing unit to terminate the employment, provided no disqualification is found by the Commission, such as discharge for inefficiency or for alleged misconduct. Such layoff may also be due to lack of work, a shutdown for vacation purposes, or because of excess inventory, material shortage, model change, taking of inventory, etc. An individual shall NOT be deemed to have been 'laid off' by an employing unit if his separation resulted from his own action to terminate employment regardless of his reason for the separation, and regardless of whether or not a disqualification is imposed." Michigan Employment Security Manual, § 5648.

The commission's brief does not indicate when its interpretation was added to the manual[1] or whether the interpretation has been consistently

---

[1] Since the interpretation is not published in materials readily available, it is somewhat difficult to determine when the interpretation was first enunciated. As best as can be determined, it was in August 1963, some nine years after the enactment of the statutory provision being construed. See MESC Manual, § 5648, print of August 6, 1963.

followed by the commission in processing claims or whether, other than this litigation, the interpretation has ever been contested by an employer and, if so, before what tribunal or courts and with what result or whether the interpretation has ever been brought to the attention of the Legislature and, if so, in what manner.

I am convinced that the commission's extension of the usual meaning of the word "layoff" to include a discharge is inconsistent with the legislative history of the back-to-work payment and I have, therefore, signed Judge Gillis' opinion which reverses the decision of the circuit court. We thereby reinstate the order of the Michigan Employment Security Appeal Board which reversed the commission's determination. The commission had found that Richard W. Foster was entitled to receive the sum of $55 as a back-to-work payment although he had been discharged by his employer. No claim is made that factually Foster was laid off and not discharged.

The back-to-work payment, originally enacted by a 1954 amendment to the employment security act, was designed as an incentive to a laid-off employee to seek temporary employment with "another" employer during the layoff period.[2] It was a reward

---

[2] The "back-to-work" payment was added by amendment of § 28(d) of the Employment Security Act. The amendment, enacted by PA 1954, No 197, added the second proviso to § 28(d), viz.:

"(d) Within each benefit year and prior to the first period with respect to which he claims benefits for unemployment in such benefit year, he must have served a waiting period of 1 week of unemployment in which he was eligible for, and entitled to, benefits in all other respects: Provided, That this requirement shall not interrupt the payment of benefits for consecutive weeks of unemployment: Provided, further, That to advance the purpose of this act *to compensate unemployed individuals for making an active search for work*, benefits shall be paid for an individual's waiting period week, in accordance with the other provisions of this act, if: (1) the individual has been laid off by his most recent employer indefinitely, or for a definite period of more than 4 weeks, and (2) the individual has accepted and commenced suitable, full-time employment

for obtaining temporary employment payable to an employee who, it was expected, ultimately would return to the employment from which he had been laid off. It is, thus, apparent that as originally enacted the back-to-work payment was not designed to encourage permanently terminated employees to seek new employment and that in using the word "layoff" the Legislature meant to distinguish between laid-off and permanently terminated employees.

In 1967 the back-to-work payment provision was amended to eliminate the requirements that (i) the laid-off employee make an "active search for work" and (ii) that the employment during the layoff period be with an employer other than the employer who laid off the employee. Now it is enough that the employee was laid off for more than three weeks and obtained employment with "any employment unit" (i.e., including re-employment by the employer who laid him off) within thirteen weeks of the last week he worked.[3]

It does seem, as the Commission argues, incongruous to pay the one week back-to-work benefit to an employee who is laid off for more than three weeks and is re-employed by his employer within thirteen weeks even though he is under no obliga-

with *another* employer within the first 4 calendar weeks following said lay off." (Emphasis supplied.)

By amendment adopted in 1965, the figure "4" in clause 2 above was changed to "13". PA 1965, No 281.

In 1967 the back-to-work provision was transferred to and added as clause 2 of § 27(c) of the act, MCLA § 421.27 (Stat Ann 1970 Cum Supp § 17.529); see Judge Gillis' opinion for the text of § 27(c)(2).

[3] Under § 28(1)(a), an employee who is laid off need not register for work in order to be eligible to receive benefits if his employer notifies the Commission in writing that the layoff is temporary and that work is expected to be available for the individual within a declared number of days, not exceeding 45 calendar days from the last day the individual worked. MCLA § 421.28 (Stat Ann 1968 Rev § 17.530). This provision was first enacted as an amendment to § 28 of the Employment Security Act by PA 1951, No 251 with a time period of 30 calendar days rather than 45.

tion to seek and does not obtain employment during the layoff and to refuse to pay the back-to-work benefit to an employee who is permanently discharged and who seeks and obtains new employment within thirteen weeks. Nevertheless, it appears from the peculiar legislative history of the back-to-work payment that the Legislature has not authorized payment of the back-to-work benefit to all involuntarily terminated employees.

The restructuring of the back-to-work benefit in 1967 so that it can be earned without regard to whether the laid-off employee seeks or obtains employment during the layoff with "another" employer, provided he is laid off for at least three weeks and employed within thirteen weeks by some employer, including by the employer who laid him off, achieved a kind of parity for some laid-off employees unable to obtain temporary employment, who arguably are in greater need of the additional benefit than a laid-off employee who obtains temporary employment.

But this enlargement of those who can obtain the benefit appears to have been a legislative compromise carefully structured to prevent every terminated and laid-off employee from obtaining the back-to-work benefit. Thus, for example, if the layoff does not last three weeks (a not uncommon occurrence) or if the laid-off employee does not return to work or obtain temporary employment within thirteen weeks, he cannot obtain the back-to-work benefit. As the commission concedes in its interpretation, an employee who quits may not earn the back-to-work benefit even if he is not disqualified by the quit from obtaining other employment security benefits.

There is no evidence in the structure or legislative history of the back-to-work provision that

the continued use in the 1967 amendatory language of the word "layoff" was inadvertent and that it was the real purpose of the Legislature to eliminate the distinction made in the original 1954 act between workmen laid off and those permanently terminated. Without evidence that the use of the word "layoff" was inadvertent and that it was the legislative purpose in enacting the 1967 amendment to allow permanently terminated workmen as well as laid-off workmen to earn the back-to-work payment, we would not be justified in imputing to the Legislature such a purpose because the legislative compromise strikes us as illogical or inequitable. We cannot properly ascribe to the word "layoff" a special meaning without any evidence that a special meaning was intended.

Now that a large number of laid-off employees earn the benefit although they do not seek to obtain temporary employment, it is difficult to justify denial of like treatment to all employees who become unemployed for nondisqualifying reasons. But, unless it is contended and established that the inequity rises to constitutional dimensions, it is beyond our authority to provide parity.