GENERAL MOTORS CORPORATION v ERVES

OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—LAY-OFFS—BACK-TO-WORK BENEFIT.

The primary purpose of the Employment Security Act is to compensate workers for lost wages; therefore, workers were not entitled to a back-to-work benefit provided for employees laid off "for more than 3 weeks" where the actual time period between notice of layoff and resumption of work was three weeks and two days but where the impact of the layoff in terms of wages was not felt for "more than 3 weeks" since the workers were laid off on a Friday and suffered no wage loss on the Saturday or Sunday which immediately followed; such workers were laid off, for purposes of the back-to-work benefit, as of the first day they would have expected to work, that is, the Monday they were told not to report to work (MCLA 421.27[c][2]).

2. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—LAY-OFFS—BACK-TO-WORK BENEFIT—PERIOD OF UNEMPLOYMENT.

The provision of the Employment Security Act which requires a layoff of more than three weeks to qualify an employee for a back-to-work benefit does not likewise require a "period of unemployment", as defined by the act, to extend for any particular time; therefore, the fact that workers laid off for more than three weeks received certain "short week" benefits which were payable under their union agreement with their employer did not affect their claim to the back-to-work benefits where they had both the "more than 3 weeks" of layoff and "a period of unemployment" to qualify them (MCLA 421.27[c][2]).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 13 et seq.

[3] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 46.

3. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—CON-
      STRUCTION OF STATUTES—ADMINISTRATIVE INTERPRETATION.
      *The construction given to a provision of the Employment Security
      Act by the agency charged with the duty of executing the act is
      entitled to respectful consideration by the Court of Appeals.*

Appeal from Wayne, Roland L. Olzark, J. Sub-
mitted Division 1 November 13, 1972, at Detroit.
(Docket Nos. 13094–13098.) Decided May 25, 1973.
Leave to appeal granted as to claims of Lawson
and Bloomer, and denied to Employment Security
Commission, 390 Mich 782.

Claims by John Erves and other employees of
General Motors Corporation for unemployment
compensation. On appeal to circuit court, benefits
were awarded. General Motors Corporation ap-
peals. Affirmed in part, reversed in part, and
remanded.

*Edmond J. Dilworth, Jr. (Ross L. Malone,* Gen-
eral Counsel, and *Harry S. Benjamin, Jr.,* and
*Eugene L. Hartwig,* of counsel), for General Motors
Corporation.

*Stephen I. Schlossberg, John A. Fillion,* and
*Jordan Rossen,* for claimant appellees.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Felix E. League,*
Assistant Attorney General, for the Employment
Security Commission.

Before: LEVIN, P. J., and V. J. BRENNAN and
O'HARA,* JJ.

LEVIN, P. J. Plaintiff, General Motors Corpora-
tion, appeals a judgment of the circuit court order-
ing payment of "back-to-work" benefits to the five
individual defendants. We affirm as to defendants

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Lawson and Griffith and reverse as to defendants Bloomer, Kartsonas, and Erves.

All five individual defendants were employed by General Motors Corporation, Cadillac Car Division. All were laid off during the annual model change-over period in the summer of 1968.

(I) Bloomer and Kartsonas received their layoff notices at the end of their shift on Friday, August 2, 1968. They returned to work three weeks and two days later, on Monday, August 26, 1968. Erves received his notice at the end of his shift on Friday, July 5, 1968 and, similarly, returned to work three weeks and two days later, on Monday, July 29, 1968.

(II) Lawson and Griffith received notices at the end of their shift on Wednesday, July 31, 1968, and returned to work four weeks later, on Wednesday, August 28, 1968.

At issue is the back-to-work benefit—a sum equal to one week's unemployment compensation —payable under the Employment Security Act to an employee who has "a period of unemployment" which commenced with a "layoff" that continues "for more than 3 weeks" and who obtains employment with any employer within 13 weeks of the last week worked:

"(2) When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in full-time work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid for the most recent week in such period for which benefits are payable or were paid to him or for which he was

entitled to credit for a waiting week, an amount equal
to his currently applicable weekly benefit rate in addi-
tion to any benefits otherwise payable or paid to him
for such week."[1]

## I

General Motors contends that the layoff notices
received by Bloomer, Kartsonas, and Erves on a
Friday became effective as of the next scheduled
day of work, the following Monday, and therefore
the layoff lasted exactly three weeks, not longer.
The three men contend that the layoff became
effective on the last day worked and, therefore,
they were laid off for three weeks and two days
and are entitled to back-to-work benefits.

The men argue that decision here is controlled
by Michigan Supreme Court decisions denying
group life insurance benefits to beneficiaries of laid
off employees.[2] In the cited cases, however, there
was no issue concerning the status of the employee
between receipt of notice of layoff and the next
day—but for the notice of layoff—he would have
expected to work. Nor would the Court's conclu-
sions concerning insurance coverage in those cases
be determinative of legislative intent in enacting
this peculiar proviso of the Employment Security
Act.

The primary purpose of the act is to compensate
workers for lost wages. While the individual de-
fendants had worked occasionally on weekends
during the first half of 1968, this was not the usual
practice. Bloomer and Kartsonas had not worked

---

[1] 1968 PA 338, § 27 (now, as subsequently amended, MCLA
421.27[c][2]; MSA 17.529[c][2]). *See, generally, MESC v General Motors
Corp*, 32 Mich App 642 (1971).

[2] *Klat v Chrysler Corp*, 285 Mich 241 (1938); *England v Aetna Life
Insurance Co*, 285 Mich 302 (1938); *Klym v Aetna Life Insurance Co*,
305 Mich 508 (1943).

any weekend during the two months preceding the layoff; the record is silent as to Erves. It appears that the impact of the layoff in terms of wage loss was not felt until the Monday after the last day the men worked.

The men suffered no wage loss on the Saturday or Sunday which immediately followed the last day of work. They lost three weeks' wages—not "more". How then could they have been laid off for more than three weeks? Only by ignoring customary usage and a common-sense construction of the legislative language and purpose would exactly "3 weeks" of lost work become—by counting a superfluous, ordinarily not worked Saturday and Sunday—"more than 3 weeks".[3]

Of controlling concern is the time when the impact of the layoff becomes felt by a worker and when it is lifted. We see that impact, for purposes of the back-to-work benefit, primarily in terms of lost wages, rather than any of the other possible incidents of a layoff which may affect a worker at an earlier or later point in time.

Erves, Bloomer, and Kartsonas were laid off, for purposes of the back-to-work benefit, as of the first day—but for the notice of layoff—they would have expected to work, that is, the Monday they were told not to report for work. They were reemployed exactly three weeks later when they reported for work. They are not entitled to back-to-work benefits.

We have considered the commission's interpretation in its manual providing that for purposes of

---

[3] An employer might, of course, word a notice of layoff so that it does not become effective until Monday morning. He might also arrange to have the notice delivered at dawn Monday. Eligibility for the back-to-work benefit should not turn on how the notice is worded or when it is delivered or the terms of an agreement with a union constricting the time for giving notice.

determining eligibility for the back-to-work payment "the controlling factor in determining the effective date of the layoff will be either the last day on which work was made available by the employing unit or the date of notification of layoff to the worker, whichever is later".[4]

While this guideline works well where the last day worked is in the middle of a regularly scheduled work week, we believe it to be unnecessarily inflexible and inconsistent with the spirit of the act in failing to differentiate that case from the kind of case now before us where the last day worked is the last day of a normal five-day work week and there is no expectation that work will be provided on Saturday and Sunday.

## II

Lawson and Griffith were laid off for four weeks. They argue that, perforce, they have met the statutory qualification of "a layoff * * * that continued * * * for more than 3 weeks".

General Motors would read the statute as requiring a "period of *unemployment*" of "more than 3 weeks". Because Lawson and Griffith received "short-week" benefits under their union's agreement with General Motors,[5] they were not "unemployed" within the Employment Security Act's special meaning of that word during the week in which they were laid off or the week in which they resumed work.[6] General Motors argues that since

---

[4] *See* MESC Manual, Part V, ¶ 5648 C3.

[5] "Short-week" benefits are paid when a worker is laid off for part of a 40-hour week. He is paid 80% of his base salary for the portion of the week he does not work.

[6] The term "unemployment" is defined in the act as follows:

"Sec. 48. An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any

Lawson and Griffith were not unemployed for "more than 3 weeks", they could not have been laid off for more than three weeks.

But Lawson and Griffith were unemployed. They had "a period of unemployment." While the act requires a layoff of more than three weeks, it does not in terms require that the period of unemployment extend for any particular time; it requires simply "a period of unemployment"—the length of that period is not explicitly stated. The only length explicitly stated is "more than 3 weeks" of layoff. The back-to-work benefit is geared to the period of the layoff, not the period of unemployment.[7]

week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate". MCLA 421.48; MSA 17.552.

Lawson and Griffith were not unemployed during weeks in which they received short-week benefits because their remuneration exceeded their weekly benefit rate.

The term "layoff" is not defined in the act. *See MESC v General Motors Corp, supra.*

[7] The back-to-work payment was added by a 1954 amendment of § 28(d) of the Employment Security Act. 1954 PA 197; MCLA 421.28; MSA 17.530.

Section 28(d) then and now provides that in each benefit year a claimant *"must have served a waiting period of 1 week of unemployment* in which he was eligible for, and entitled to, benefits in all other respects".

The 1954 amendment added the following proviso to § 28(d): "to advance the purpose of this act to compensate unemployed individuals for making an active search for work, *benefits shall be paid for an individual's waiting period week"* if the individual has been laid off indefinitely, or for a definite period of more than four weeks, and the individual has accepted and commenced suitable, full-time employment with another employer within the first four calendar weeks following the layoff.

The back-to-work payment was, thus, originally enacted in respect to "a waiting period of *1 week of unemployment"* during which the worker is otherwise entitled to benefits.

By amendment adopted in 1965 the time for obtaining full-time employment was extended from 4 to 13 weeks. 1965 PA 281.

In 1967 the provision for the back-to-work payment took its present form (see text of this opinion) and was transferred to and added as clause (2) of § 27(c) of the act (MCLA 421.27; MSA 17.529) but the pertinent language of § 28(d) regarding the waiting week above quoted was retained as it read before the 1954 amendment.

There is no reason to believe that when the Legislature in 1967

Affirmed as to Lawson and Griffith; reversed as to Erves, Bloomer and Kartsonas. Remanded for proceedings in accordance with this opinion.

V. J. Brennan, J., concurred.

O'Hara, J. *(concurring in part; dissenting in part)*. Judicial candor compels me to say that I have extreme difficulty in understanding § 27(c)(2),[1] when read, as it must be, in connection with the rest of the Employment Security Act.

If the three-week period of *layoff,* as used in § 27(c)(2), must also be a period of unemployment as the term "unemployed" is defined in § 48[2] the result reached in this case would of necessity be different from that reached by Judge Levin.

If the term "week" as defined in § 50(a)[3] of the act is to be regarded as controlling in the computation of the three weeks of layoff required by § 27(c)(2) obviously the result reached by Judge Levin would also be changed.

As I grope for that elusive concept "legislative intent" in 27(c)(2) it seems to me the Legislature was trying to provide a benefit "in addition to any benefits otherwise payable". If this be true, then to

---

chose to reduce the minimum period of layoff for qualification for the back-to-work payment from four weeks to three weeks and otherwise liberalized the entitlement to the back-to-work payment *(see MESC v General Motors Corp, supra)* it intended by using the words *"a period* of unemployment" to require that the period be longer than one week. The language of clause (i) of the present formulation, "for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week" restates the concept of at least one waiting week per benefit year *(i.e.,* by reason of the terms of § 28[d], "1 week of unemployment"), and, thus, supports the view that even if the period of "unemployment" is less than three weeks a worker can become entitled to the back-to-work payment if he is laid off for more than three weeks and otherwise meets the requirements of § 27(c)(2).

[1] MCLA 421.27(c)(2); MSA 17.529(c)(2).

[2] MCLA 421.48; MSA 17.552.

[3] MCLA 421.50(a); MSA 17.554(a).

effect the legislative intention, the words "irrespective of any other provision of this act" must be read into 27(c)(2). If this be not true then the terms "unemployed" and "week" as elsewhere used must somehow be reconciled with their use in 27(c)(2).

I think what is troubling me most deeply is the distinction made by Judge LEVIN between the categories designated as the "Erves, Bloomer, and Kartsonas" group and the "Lawson and Griffith" group.

It's all very well to speak about the "impact of the layoff in terms of wage loss" as to Erves, Bloomer or Kartsonas; and their "week" as the normally worked five days. As to them Judge LEVIN makes out a very pragmatic and common-sense result.

But what of Lawson and Griffith? They get not only the "back-to-work" benefit, but additionally two weeks of "short-week" benefits under the union contract. If we are to be "impact-of-layoff" oriented as to one group we ought to be so oriented as to the other. In fact it seems to me Lawson and Griffith have less entitlement to the back-to-work payments than do Erves, Bloomer, and Kartsonas. I sense almost an equal protection issue as between the two groups. Both groups ought to be eligible or not eligible instead of being distinguished on the basis of whether their layoff started on Friday or midweek.

General Motors speaks strongly to the point of an undeserved and, legislatively, uncontemplated windfall under the commission's interpretation. The commission speaks to the point that windfall or no windfall, the section says what it says, and if the Legislature wanted to have prevented windfalls it should have said so in express terms.

Further it possesses the continuing power of amendment to so speak again.

Personally, I am equipoised. I opt to follow the commission under the principle expressed in *Magreta v Ambassador Steel Co,* 380 Mich 513 (1968), that the construction given to a statute by those charged with the duty of executing it is entitled to respectful consideration.

I vote to affirm as to all claimants, hopeful that the Supreme Court may address itself to the question or that the Legislature, which we presume is aware of our decisions, may want to make its intent somewhat less unclear.