CHRYSLER CORPORATION v WASHINGTON

OPINION OF THE COURT

1. STATUTES—CONSTRUCTION—COMMON LANGUAGE.

Courts must interpret words in statutes according to their ordinary usage and in the sense in which they are understood and employed in common language, and when the Legislature uses a certain phrase or word in a statute, the court must presume it was used in its normally accepted meaning.

2. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF.

The term "layoff" as used by the Legislature to describe the kind of period of unemployment required to qualify a worker for back-to-work benefits means a period of unemployment initiated at the will of the employer without prejudice to the worker (MCLA 421.27[c][2]).

3. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF —PERMANENT TERMINATION OF EMPLOYMENT.

A worker laid off by his employer and fulfilling other statutory requirements can qualify for back-to-work benefits; a worker whose employment relationship with his employer is permanently terminated cannot (MCLA 421.27[c][2]).

4. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

The primary principle of statutory construction is to determine and effect the intention of the Legislature; every word, phrase, clause, and sentence of the provision to be construed must be given force and effect, and no word, phrase, or clause shall be rendered nugatory.

5. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF —PERIOD OF UNEMPLOYMENT.

A period of unemployment of the kind defined as "layoff" must continue for *more* than three calendar weeks in order to qualify a worker for back-to-work benefits; therefore, workers

REFERENCE FOR POINTS IN HEADNOTES

[1, 4] 73 Am Jur 2d, Statutes §§ 204–208.
[2, 3, 5–7] No references.

were not entitled to such benefits where the period of unemployment for each worker, commencing at 12:01 a.m. on the Sunday following receipt of a layoff notice and ending at midnight on the Saturday preceding return to work, was a period of *exactly* three calendar weeks. (MCLA 421.27[c][2], 421.50).

DISSENT BY V. J. BRENNAN, J.

6. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF
—PERIOD OF UNEMPLOYMENT.

> *The statute providing for back-to-work benefits does not require for its application a statutorily defined "period of unemployment" of more than three weeks, but rather that there be a "period of unemployment" which commenced with a layoff that continued for more than three weeks (MCLA 421.27[c][2], 421.48).*

7. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAYOFF
—DURATION—WAGE LOSS.

> *The duration of a layoff is measured from the time the impact of the layoff becomes felt by a worker until it is lifted; this impact, in the context of back-to-work benefits, is determined by referring to the dates upon which the worker realizes a loss in wages.*

Appeal from Ingham, Sam Street Hughes, J. Submitted Division 1 June 4, 1973, at Detroit. (Docket Nos. 14863–14868.) Decided March 26, 1974. Leave to appeal applied for.

Claim by Albert Washington and others against Chrysler Corporation for unemployment compensation. Benefits granted by the Employment Security Commission. Chrysler Corporation appealed to circuit court. Affirmed. Chrysler Corporation appeals. Reversed.

*Clifford L. Johnson,* for Chrysler Corporation.

*Stephen I. Schlossberg, John A. Fillion,* and *Jordan Rossen,* for individual appellees.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Felix A. League,* Assistant Attorney General, for the Employment Security Commission.

Before: BRONSON, P. J., and V. J. BRENNAN and WALSH,* JJ.

WALSH, J. Plaintiff, Chrysler Corporation, appeals a judgment of the circuit court ordering payment of "back-to-work" benefits to the six individual defendants. We reverse as to all defendants.

All six individual defendants were employed by Chrysler Corporation at its "Mack Stamping Plant". The period of forced idleness which gave rise to this case was engendered by Chrysler's annual model changeover which took place in the summer of 1968.

For the sake of this statement of facts alone, the six individual defendants will be placed into three separate groups.

(I) Washington and Greer worked from Monday, July 1, through Friday, July 5, and, at the end of their workday on Friday, they received their layoff notices. Both Washington and Greer received pay representing 43 working hours for this week (each received eight hours holiday pay for Thursday, July 4). Washington and Greer returned to work on Monday, July 29, 1968, and they worked that full week.

(II) Clark, Turonek, and Preston Williams worked from Monday, July 1, through Wednesday, July 3, and, at the end of their workday on Wednesday, were given their layoff notices. All three of these defendants did, however, receive eight hours holiday pay for Thursday, July 4. These men

---

* Circuit judge, sitting on the Court of Appeals by assignment.

returned to work on Monday, July 29, 1968, and they worked a full week.

(III) John Williams was given his layoff notice on Thursday, July 11, 1968. He returned to work on Monday, August 5, 1968, and worked a full week.

All six individual defendants filed claims for so-called "back-to-work" benefits provided for in MCLA 421.27(c)(2); MSA 17.529(c)(2). The defendant Michigan Employment Security Commission allowed the benefits and plaintiff, after affirmances by an MESC referee, the MESC Appeal Board, and the Ingham County Circuit Court, is here on appeal, contending that the agency and the circuit court were in error in their interpretation of MCLA 421.27(c)(2).

MCLA 421.27(c)(2) provides as follows:

"Sec. 27(c)(2). When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in full-time work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid, for the most recent week in such period for which benefits are payable or were paid to him or for which he was entitled to credit for a waiting week, an amount equal to his currently applicable weekly benefit rate in addition to any benefits otherwise payable or paid to him for such week. Benefits shall be payable under this paragraph only for 1 week in an individual's benefit year and only to the extent that the individual is otherwise entitled to benefits under subsection (d) of this section. An individual shall be deemed to be engaged in full-time work for an employing unit if he has earned with such employing unit within any period of 7 consecutive days commencing within such 13 week

period an amount equal to his currently applicable weekly benefit rate. To be eligible for benefits under this subsection, an individual shall file therefor within 13 calendar weeks after the end of the week for which benefits are payable in accordance with this subsection."

Essential to the interpretation to this section is an understanding of the meaning of the terms "period of unemployment", "layoff", and "week" as those terms are used in the act. The term "unemployed" is defined in § 48 of the act, MCLA 421.48; MSA 17.552; the term "week" is defined in § 50 of the act, MCLA 421.50; MSA 17.554; the term "layoff" is not defined in the act.

Section 48 provides in relevant part:

"Sec. 48. An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate."

Section 50 provides:

"Sec. 50. 'Week' means calendar week, ending at midnight Saturday."

Application of the foregoing definitions to the facts presented in this case mandates the conclusion that each of the six individual defendants had a period of unemployment of exactly three weeks duration. Indeed, it does not appear that any of the defendants—appellees seriously argues for a different conclusion with regard to the duration of the period of unemployment. Each of the individual defendants earned remuneration in excess of his weekly benefit rate both in the week in which he received his layoff notice and in the week in

which he returned to work. Hence, the period of unemployment commenced for each man at 12:01 a.m. on the Sunday following receipt of the layoff notice and ended at midnight on the Saturday preceding return to work. In each case this was a period of exactly three calendar weeks.

Section 27(c)(2)(ii), however, provides that the "layoff" must continue for *more* than three weeks. The issue to be determined in this controversy, therefore, resolves itself to this: Does § 27(c)(2) require both a layoff and a period of unemployment, or does it merely require a period of unemployment of the type defined as a layoff? Is a "layoff" a "period of unemployment" or something separate and distinct from a period of unemployment? If a "layoff" is a "period of unemployment", none of the individual defendants had a "layoff" which continued for more than three weeks since none of the individual defendants had a "period of unemployment" which continued for more than three weeks.

In exercising the judicial function of determining legislative intent courts must interpret words according to their ordinary usage and in the sense in which they are understood and employed in common language, and when the Legislature uses a certain phrase or word in a statute, the court must presume it was used in its normally accepted meaning. See *American Telephone & Telegraph Co v Employment Security Commission,* 376 Mich 271, 136 NW2d 889 (1965); *Employment Security Commission v General Motors Corp,* 32 Mich App 642; 189 NW2d 74 (1971).

Webster's Third New International Dictionary of the English Language Unabridged (1967) defines layoff as follows:

"Lay off (vt) To *cease to employ* (a worker) usually

temporarily because of slack in production and without prejudice to the worker usually distinguished from fire.

"Layoff (n) 1. The act of laying off an employee or a work force; 2. A *period of being* away from or *out of work.*"(Emphasis added.)

The United States Bureau of Labor Statistics, Handbook of Labor Statistics, 1936, pp 803–804, states that:

"A 'layoff' is a *termination of employment* at the will of the employer, without prejudice to the worker." (Emphasis added.)

Appellee, Michigan Employment Security Commission, acknowledges in its brief (p 2) that "it was the intention of the Legislature by this unqualified use of the term 'layoff' to ascribe to that term its broad general definition of any *separation from employment* at the will of the employer". (Emphasis added.)

From the foregoing we conclude that when the Legislature used the term "layoff" it meant a period of unemployment initiated at the will of the employer without prejudice to the worker. The term "layoff" was used to describe the kind of period of unemployment required to qualify the worker for the "back-to-work" benefit.

We reject the conclusion that the Legislature used the term "layoff" in § 27(c)(2) for the purpose of distinguishing the "layoff" required in subsection (ii) from the "period of unemployment" to which subsections (i) and (iii) refer. This conclusion is inconsistent with the legislative history of the "back-to-work" benefit. As former Judge, now Justice, LEVIN reasoned in his concurring opinion in *Employment Security Commission v General Motors Corp,* 32 Mich App 642, 650–651; 189 NW2d 74 (1971):

"The back-to-work payment, originally enacted by a 1954 amendment to the employment security act, was designed as an incentive to a laid-off employee to seek temporary employment with 'another' employer during the layoff period. It was a reward for obtaining temporary employment payable to an employee who, it was expected, ultimately would return to the employment from which he had been laid off. It is, thus, apparent that as originally enacted the back-to-work payment was not designed to encourage permanently terminated employees to seek new employment *and that in using the word 'layoff' the Legislature meant to distinguish between laid off and permanently terminated employees.*" (Emphasis added.)

Thus the term "layoff" is used by the Legislature to describe the kind of "period of unemployment" required to qualify the worker for the "back-to-work" benefit. If an individual is laid off by his employer, and if the other conditions of § 27(c)(2) are fulfilled, he can qualify for the benefit; if his employment relationship with his employer is permanently terminated, he cannot.

In this case each of the individual defendants had a "period of unemployment" which continued for exactly three calendar weeks. Appellees contend that each of the individual defendants also had a "layoff" which continued for more than three calendar weeks. We disagree. Section 27(c)(2) does not provide for both a "period of unemployment" and a "layoff". It provides for a "period of unemployment" of the kind defined as "layoff". The "layoff" *is* the "period of unemployment". It cannot be separated from the "period of unemployment" in the sense that one could say that the "layoff" continued for a longer period of time than the "period of unemployment".

The defendants argue that if a layoff is a period of unemployment, subsection (ii) is irreconcilable

with subsection (i). Subsection (ii) would require a period of unemployment of more than three weeks, while subsection (i) would require a period of unemployment of only one week. This argument gives no force and effect to the words "with such employing unit" in subsection (ii). For this reason it must be rejected.

The primary principle of statutory construction is to determine and effect the intention of the Legislature. Every word, phrase, clause, and sentence of the provision to be construed must be given force and effect and no word, phrase, or clause shall be rendered nugatory. See *Melia v Employment Security Commission,* 346 Mich 544, 562; 78 NW2d 273 (1956).

Subsection (ii) of § 27(c)(2) provides that there must be a layoff "that continued *with such employing unit* for more than 3 weeks". (Emphasis added.) Obviously a layoff cannot *continue* with any employing unit other than the employing unit that initiated it. The only purpose therefore for using the phrase "with such employing unit" in subsection (ii) is to distinguish the "more than 3 weeks" requirement of subsection (ii) from the one-week requirement of subsection (i). Subsection (i) requires that there be a period of unemployment which lasts for at least one week with respect to any and all employing units, *i.e.,* a period of unemployment for which benefits are paid or for which credit for a waiting week is received. Subsection (ii) requires that the period of unemployment continue for more than three weeks "with such employing unit", *i.e.,* with respect to the employing unit initiating the layoff. In other words, subsection (i) provides that there must be one calendar week during which the individual does not receive remuneration in an amount equal

to his weekly benefit rate from any employing unit whatsoever. Subsection (ii) provides that there must be more than three weeks during which the individual does not receive remuneration in an amount equal to his weekly benefit rate from the employing unit initiating the layoff, although, after the first week, he may receive remuneration in excess of his weekly benefit rate from another employing unit.

Much of the confusion in this case has been engendered by failure to attribute to the term "layoff" its commonly accepted meaning. If a layoff is not a period of unemployment, then the act gives no assistance in determining when a layoff begins and ends. Workers will claim that the layoff begins on the last day worked or on the day on which notification of layoff was received, whichever occurred last. This is essentially the position accepted by the commission. Employers will claim that the layoff begins on the next regularly scheduled day of work following the last day worked.

Both positions are fraught with difficulties. If the Court were to adopt the former, the employer could make the back-to-work benefit available to one employee and unavailable to another, even if both employees were out of work for exactly the same three-week period of time, merely by giving notice of layoff to one employee on Friday afternoon and to the other on Monday morning. We cannot believe that the Legislature intended such a result. If the Court were to adopt the latter position, it would be necessary to determine in each case what the next regularly scheduled workday was following the last day of work. Although this would be obvious in some cases, in other cases the resolution of the question would be subject to varying interpretations and could often require

recourse to the commission and ultimately to the courts.

If we apply to the term "layoff" its commonly accepted meaning, the intention of the Legislature as expressed in § 27(c)(2) is easily determined. Subsection (i) requires a one week period of unemployment with respect to any and all employing units, *i.e.,* a period of unemployment for which benefits are paid for at least one week or for which credit for a waiting week is received. Subsection (ii) sets forth two requirements: First, the period of unemployment, at least initially, must be of the type commonly known as a "layoff" as distinguished, for instance, from a period of unemployment resulting from discharge, dismissal, permanent termination of or final release from employment; and second, the period of unemployment must continue for more than three weeks "with such employing unit", *i.e.,* with respect to the employing unit initiating the layoff. Subsection (iii) requires that the period of unemployment be terminated through reemployment with any employing unit within 13 weeks.

It is our opinion that, in the context of § 27(c)(2), when the Legislature provided that the layoff must continue with such employing unit for more than three weeks it intended to use the term "layoff" in its commonly accepted meaning of "period of unemployment". Thus the Legislature intended that, with respect to the employing unit initiating the layoff, the period of unemployment must continue for more than three weeks. In this case the period of unemployment did not continue for more than three weeks for any of the individual defendants. None of them, therefore, are entitled to the "back-to-work" benefit.

Reversed as to all defendants. No costs, the construction of a statute being involved.

Bronson, P. J., Concurred.

V. J. Brennan, J. *(concurring in part; dissenting in part).* Plaintiff, Chrysler Corporation, appeals a judgment of the circuit court ordering payment of "back-to-work" benefits to the six individual defendants. I would reverse as to defendants Washington and Greer and affirm as to defendants Clark, Turonek, Preston Williams, and John Williams.

For the reasons stated in *General Motors Corp v Erves,* 47 Mich App 591; 209 NW2d 713 (1973), I do not agree that MCLA 421.27(c)(2); MSA 17.529(c)(2) requires, for its application, a "period of unemployment", as defined in MCLA 421.48; MSA 17.552, for more than three weeks. What is required is that there be a "period of unemployment" which commenced with *a layoff that continued for more than three weeks.* A layoff period of more than three weeks is required, not a "period of unemployment" of more than three weeks.

In determining the duration of a layoff period the primary focus of our inquiry is on the time when the impact of a layoff becomes felt by a worker and when it is lifted. This impact is determined, in the context of back-to-work benefits, by referring to the dates upon which the worker realizes a loss in his wages. *General Motors Corp v Erves, supra.*

In the case at bar defendants Washington and Greer, like defendant Erves in *General Motors Corp v Erves, supra,* received their layoff notices at the end of the workday on Friday, July 5, 1968. The layoff period, as determined by the dates that a wage loss was suffered by these defendants, can only be said to have begun on the Monday following receipt of the notices. Since these two defendants were back to work on Monday, July 29, 1968,

the period of their layoff was not in excess of three weeks. Accordingly, the circuit court erred in awarding back-to-work benefits to these two defendants.

Defendants Clark, Turonek, and Preston Williams received their layoff notices on Wednesday, July 3, 1968, and received eight hours holiday pay for July 4, 1968. They did not return to work until Monday, July 29, 1968. Defendant John Williams received his layoff notice on Thursday, July 11, 1968, and returned to work on Monday, August 5, 1968. Plaintiff contends that these defendants were not scheduled to work on the Fridays following the receipt of their respective notices. It appears from the record, however, that with respect to each of these defendants their normal workweek was Monday through Friday and that the reason they were not scheduled to work on the Friday following receipt of their notices was directly related to their layoff. These defendants "felt the impact" of their layoff on the Friday following receipt of their notices. The duration of their layoff period was, therefore, in excess of three weeks and they are entitled to receive back-to-work benefits.