GENERAL MOTORS CORPORATION v ERVES (ON REHEARING)

CLAIM OF LAWSON

CLAIM OF BLOOMER

Docket Nos. 55138–55141. Argued September 10, 1974 (Calendar Nos. 6, 7).—Decided December 18, 1975, 395 Mich 604. Rehearing granted 395 Mich 923. Submitted on rehearing January 27, 1976 (Calendar No. 11).—Decided December 30, 1976. Rehearing denied and order modified 400 Mich 953.

John Erves, Elmer Bloomer, and Gus P. Kartsonas received notices of layoff for a model changeover from their employer, Cadillac Motor Car Division of General Motors Corporation, at the end of their shifts on a Friday. They returned to work on a Monday, 24 calendar days later. Billy Joe Lawson and Lester A. Griffith received notices of layoff from the same employer on a Wednesday and returned to work on a Wednesday four weeks later; pursuant to contract they received short-week benefits of 80% of base pay for two days not worked in each of the two weeks for which they also received regular pay for three days. All claimants filed for back-to-work benefits pursuant to the Employment Security Act, MCLA 421.27(c)(2); MSA 17.529(c)(2). The Employment Security Commission determined that the claimants were entitled to benefits, and their employer appealed to the Wayne Circuit Court, Roland L. Olzark, J., which ordered payment of back-to-work benefits. The Court of Appeals, Levin, P. J., and V. J. Brennan and O'Hara, JJ., reversed as to the claims of Bloomer, Kartsonas and Erves and affirmed as to the claims of Lawson and Griffith (Docket Nos. 13094–13098). General Motors Corporation appeals as to Lawson, and claimant Bloomer appeals. *Held:*

None of the claimants is entitled to back-to-work benefits.

Justice Coleman, with Justices Fitzgerald and Lindemer concurring, would reverse the decision of the Court of Appeals as to Lawson and affirm as to Bloomer, *i.e.,* would hold that

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5, 7–11, 13–19] 76 Am Jur 2d, Unemployment Compensation §§ 59, 79.

[3, 6] 76 Am Jur 2d, Unemployment Compensation §§ 6, 7.

[12] 76 Am Jur 2d, Unemployment Compensation § 1.

none of the claimants is entitled to benefits. She would apply the "economic impact" test because the intention of the Employment Security Act is to soften the economic impact of unemployment. When an employee receives notice of layoff on a Wednesday and returns to work on a Wednesday four weeks later, and pursuant to contract receives short-week benefits of 80% of base pay for the two days not worked in each of the two weeks for which he also received regular pay for three days, he has lost only three full weeks of wages and should not be entitled to back-to-work pay. Lawson and Griffith were not laid off in excess of three weeks because they were not unemployed in excess of three weeks; therefore, they are not entitled to back-to-work benefits. In the case of employees laid off on a Friday who have been paid for that week and would receive no additional pay for Saturday or Sunday had they not been laid off, the economic impact is not felt until Monday, the next working day. When an employee is notified of a layoff at the end of the regular work day on Friday, his period of unemployment commences on the next regular work day, Monday, for the purposes of the statute providing back-to-work benefits. Bloomer, Kartsonas and Erves are not entitled to back-to-work pay.

Justice Ryan agreed with Justice Coleman that none of the claimants is entitled to benefits. He agreed with Justice Williams' observation that the terms "layoff" and "unemployment" have substantially different meanings. The "laid-off" employee is not employed because of work shortage, plant shutdown or the like, not because of some wrongful act on the part of the employee which would justify his discharge. The employee's layoff commences when this particular relationship with his employer, that of the employee's "unemployment" due to lack of available work, begins. He would hold that an employee's layoff begins when he first becomes "unemployed" with respect to his initial employer and continues until the employee is no longer "unemployed" with respect to the initial employer. An employee is not "unemployed" during a week in which he received short-week benefits, because the remuneration was not less than the weekly benefit rate. None of the claimants returned to work with his initial employer more than three weeks from the layoff, and therefore, none are entitled to back-to-work benefits. He would affirm the Court of Appeals as to the claims of Bloomer, Kartsonas and Erves, and reverse the Court of Appeals as to the claims of Lawson and Griffith.

Justice Williams, with Chief Justice Kavanagh concurring, would affirm the decision of the Court of Appeals as to Lawson

and reverse as to Bloomer *i.e.,* he would hold that all claimants are entitled to benefits. The "back-to-work" benefit provision of the Employment Security Act, as amended in 1967, was a compromise designed, in response to efforts to eliminate the waiting week during which unemployed persons are ineligible for benefits, to allow certain, but not all, persons to receive back-to-work benefits for the waiting week. The reference to "more than 3 weeks" in subsection (ii) of the back-to-work section pertains to the period of the "layoff" (which is not merely a kind of unemployment) rather than the period of the "unemployment", *i.e.,* it requires that the layoff, not the period of unemployment, continue for more than three weeks. Lawson, whose last day of work was July 31, 1968, and who returned to work on August 28, 1968, was laid off for exactly four weeks within the meaning of subsection (ii), and since it is undisputed that he met the requirements of subsections (i) and (iii), he is entitled to back-to-work benefits. The last day worked, not the next regularly scheduled work day, is the start of the layoff period for purposes of back-to-work benefits. Claimant Bloomer, who was laid off on a Friday at the end of work and returned to work on a Monday three weeks and two days later, was therefore laid off for more than three weeks and is entitled to back-to-work benefits.

Justice Levin took no part in the decision of this case.

· 47 Mich App 591; 209 NW2d 713 (1973) affirmed in part, reversed in part.

### Decision of the Court

1. Unemployment Compensation—Layoff—Back-to-Work Benefits.
   A decision of the Court of Appeals that workers were laid off, for purposes of back-to-work benefits, as of the first day they would have expected to work after receiving notice of layoff is affirmed, and a decision that the receipt of "short-week" benefits under a union agreement did not affect claims for back-to-work benefits is reversed.

### Opinion by Coleman, J.

### Fitzgerald and Lindemer, JJ.

2. Unemployment Compensation—Layoff—Back-to-Work Benefits.
   *When an employee is notified of a layoff at the end of the regular work day on Friday his period of unemployment commences on the next regular work day, Monday, for the purposes of the statute providing for back-to-work benefits (MCLA 421.27[c][2], as amended by 1967 PA 254).*

3. UNEMPLOYMENT COMPENSATION—STATUTES—CONSTRUCTION—PUR-
POSE.

> The Employment Security Act softens the economic burdens of those who through no fault of their own find themselves unemployed through the payment of benefits in order that they might maintain purchasing power and limit the social and economic consequences of unemployment.

4. UNEMPLOYMENT COMPENSATION—LAYOFF—STATUTES—CONSTRUC-
TION.

> A "layoff", as the word is used but not defined in the Employment Security Act, is a temporary dismissal by the employer which anticipates reemployment; it is therefore distinguished from unemployment by reason of discharge, resignation, or other permanent termination (MCLA 421.27[c][2], as amended by 1967 PA 254).

5. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS.

> The statute providing for back-to-work benefits requires a period of unemployment which commenced with a layoff that continued for more than three weeks (MCLA 421.27[c][2], as amended by 1967 PA 254).

6. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

> Although consideration should be afforded to the interpretation of the Employment Security Act by the Employment Security Commission, the ultimate responsibility to interpret legislative intent cannot be abdicated by the Court.

7. UNEMPLOYMENT COMPENSATION—LAYOFF—SHORT-WEEK BENEFITS—
BACK-TO-WORK BENEFITS.

> Unemployment compensation claimants were unemployed for exactly three weeks where they received notice of a layoff at the end of their shifts on a Wednesday and returned to work on a Wednesday four weeks later but where short-week benefits amounting to 80% of base pay were paid for the two days they did not work in each of the first and last weeks; they lost pay for exactly three weeks and because they were not unemployed in excess of three weeks they are not entitled to back-to-work benefits (MCLA 421.27[c][2], as amended by 1967 PA 254).

8. UNEMPLOYMENT COMPENSATION—LAYOFF—BACK-TO-WORK BENEFITS.

> The economic impact on hourly employees who received layoff notices at the end of their shifts on Friday did not begin until the next regular day of work, Monday, and their period of unemployment which commenced with a layoff, for purposes of the back-to-work benefits provision of the Employment Security

*Act, started on Monday, the first day when no wages were paid, not on the Friday on. which they received notice (MCLA 421.27[c][2], as amended by 1967 PA 254).*

OPINION BY RYAN, J.

9. UNEMPLOYMENT COMPENSATION—LAYOFF—BACK-TO-WORK BENEFITS.

*An employee's layoff commences, for the purpose of the statute providing for back-to-work benefits, when the particular employee's relationship with his initial employer, that of "unemployment" due to lack of available work, begins; the employee's layoff begins when he becomes "unemployed" within the meaning of § 48 of the Employment Security Act with respect to his initial employer and continues until the employee is no longer "unemployed" with respect to such initial employer (MCL 421.27[c][2]; MSA 17.529[c][2], as amended by 1967 PA 254; MCL 421.48; MSA 17.552).*

OPINION BY WILLIAMS, J.

KAVANAGH, C. J.

10. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—STATUTES.

*The language and purpose of the back-to-work payments provision of the Employment Security Act, as amended in 1967, differed substantially from those of the original provision; the 1967 provision was designed, as a compromise in response to efforts to eliminate the waiting week during which unemployed individuals are ineligible for benefits, to allow certain, but not all, individuals to receive back-to-work benefits for the waiting week (MCLA 421.27[c][2], as amended by 1967 PA 254).*

11. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—STATUTES—THREE-WEEK REQUIREMENT.

*The reference in the back-to-work provision of the Employment Security Act to "more than 3 weeks" is to the period of the "layoff", not to the period of the "unemployment"; it requires that the layoff, not the period of unemployment, continue for more than three weeks (MCLA 421.27[c][2][ii], as amended by 1967 PA 254).*

12. UNEMPLOYMENT COMPENSATION—STATUTES—WORDS AND PHRASES—UNEMPLOYMENT.

*The word "unemployment" is specifically defined in the Employment Security Act, and therefore has a special meaning; the critical factors for determining if an individual is in a state of "unemployment" is whether he has received remuneration or*

*performed any services during the weeks in question (MCLA 421.48).*

13. Unemployment Compensation—Statutes—Words and Phrases
    —Layoff.

   *The term "layoff" is nowhere defined in the Employment Security Act, and it must be presumed that it was used in its normally accepted meaning; it is not a termination of the relationship between the employee and his employing unit, but a change in the relationship whereby, at the will of the employer, the employee for a fixed or indefinite period suspends his labors for his employer because no work is available (MCLA 421.27[c][2], as amended by 1967 PA 254).*

14. Unemployment Compensation—Back-to-Work Benefits—Lay-
    off—Unemployment.

   *The terms "layoff" and "unemployment" as used in the back-to-work provision of the Employment Security Act have substantially different meanings and an employee's period of layoff is unaffected by whether he is employed temporarily by another employer (MCLA 421.27[c][2], as amended by 1967 PA 254).*

15. Unemployment Compensation—Layoff—Back-to-Work Bene-
    fits—Eligibility.

   *An employee who was laid off on a Wednesday and did not work for four weeks must be considered to have been laid off for the entire four-week period and entitled to back-to-work benefits even though he received short-week benefits for the two weeks for which he received regular pay for three days (MCLA 421.27[c][2], as amended by 1967 PA 254).*

16. Unemployment Compensation—Back-to-Work Benefits—Lay-
    off—Computation of Time.

   *A layoff commences as of the last day worked for the purpose of determining whether it continued "for more than 3 weeks" as required for eligibility for back-to-work payments of unemployment compensation (MCLA 421.27[c][2], as amended by 1967 PA 254).*

17. Unemployment Compensation—Back-to-Work Benefits—Lay-
    off—Computation of Time—Statutes—Construction.

   *The established policy of the Employment Security Commission, before the 1967 amendment of the back-to-work provision, that the layoff was measured as of the last day worked for purposes of filing and reporting may be presumed to have been known to the Legislature, and it is proper to conclude that when the 1967*

*amendment was enacted the Legislature intended that the
layoff period should be measured from the last day worked as
was the practice at the time (MCLA 421.27[c][2], as amended
by 1967 PA 254).*

18. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAY-
OFF—COMPUTATION OF TIME—STATUTES—CONSTRUCTION.

*The policy of the Employment Security Commission in treating
the last day worked as the first day of the layoff for purposes of
eligibility for back-to-work payments under the 1967 amend-
ment of the statute should be given considerable weight in
construing the statute (MCLA 421.27[c][2], as amended by 1967
PA 254).*

19. UNEMPLOYMENT COMPENSATION—BACK-TO-WORK BENEFITS—LAY-
OFF—COMPUTATION OF TIME—ECONOMIC IMPACT.

*The "economic impact" method of determining the start of a
layoff to be the first day that wages are lost treats employees
laid off on a Friday differently from those laid off on some other
week day, because the former cannot count the first weekend to
determine whether the layoff is for more than three weeks,
whereas the latter can (MCLA 421.27[c][2], as amended by 1967
PA 254).*

*J. R. Wheatley, E. L. Hartwig,* and *Edmond J.
Dilworth, Jr. (Ross L. Malone,* General Counsel, of
counsel), for plaintiff General Motors Corporation.

*John A. Fillion* and *Jordan Rossen (Stephen I.
Schlossberg, Edwin G. Fabré, Leonard Page* and
*M. Jay Whitman,* of counsel), for defendants.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Felix E. League,*
Assistant Attorney General, for the Employment
Security Commission.

COLEMAN, J. Plaintiff, General Motors Corpora-
tion, appeals a judgment of the circuit court order-
ing payment of back-to-work benefits to five indi-
vidual defendants. The Court of Appeals reversed
as to the claims of Bloomer, Kartsonas and Erves

and affirmed as to the claims of Lawson and Griffith.

In each case, the controlling statute is MCLA 421.27(c)(2); MSA 17.529(c)(2), which provides:

"(2) When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received a credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in full-time work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid for the most recent week in such period for which benefits are payable or were paid to him or for which he was entitled to credit for a waiting week, an amount equal to his currently applicable weekly benefit rate in addition to any benefits otherwise payable or paid to him for such week. * * * "

The questions before the Court are how this enactment falls upon the following situations:

(1) Employes receive their layoff notice at the end of the shift on Friday, while receiving full pay for that week. They return to work exactly three weeks from the next work day, Monday, or three weeks and two days after receiving notice of layoff.

(2) Employes receive their notice of layoff at the end of the Wednesday shift and are paid for those days plus 80% of wages for two remaining days pursuant to contract ("short-week" benefits). They return to work on a Wednesday and again receive short-week benefits for Thursday and Friday, thereby being "unemployed" for three weeks by definition, although not working for four weeks.

### Bloomer-Kartsonas-Erves

Because two factual situations exist, we consider first the Bloomer-Kartsonas-Erves matters.

The specific question arising from these claims is:

When an employe is notified of a "layoff" at the end of the regular work day on Friday, does his "period of unemployment" commencing with a layoff begin on Friday, Saturday or on the next regular work day, Monday, for the purposes of MCLA 421.27(c)(2); MSA 17.529(c)(2)?[1]

We agree with the Court of Appeals that the "period of unemployment * * * which commenced with a layoff" began on Monday.

Defendants were hourly employes of General Motors Corporation, Cadillac Motor Car Division. All were laid off during the annual model change-over period in the summer of 1968.[2]

Bloomer and Kartsonas received their layoff notices at the end of their shift on Friday, August 2. They were paid for that entire week. On Monday, August 26, the twenty-fourth calendar day later, they returned to work. Erves received his notice at the end of his shift on Friday, July 5, and, similarly, returned to work on a Monday, twenty-four calendar days later.

Each defendant filed a claim for back-to-work benefits pursuant to § 27(c)(2) of the Michigan Employment Security Act, the interpretation of which is the subject matter of this appeal.

---

[1] Bloomer and Kartsonas received notice on Friday, August 2, 1968 and returned to work Monday, August 26, 1968. Erves received notice on Friday, July 5, 1968 and returned to work Monday, July 29, 1968.

[2] Approximately 5000 persons were laid off. Registration and seeking-work requirements were waived by the employer and approved by MESC.

The appeal board and the Wayne circuit court found that defendants were entitled to back-to-work benefits, reasoning that their layoff became effective on the last day worked and so they would have been laid off more than three weeks. The Court of Appeals reversed, 47 Mich App 591; 209 NW2d 713 (1973), reasoning that the next regularly scheduled work day for which defendants would have received pay was Monday and so they would not have been laid off for purposes of this subsection for more than three weeks. Exactly three weeks of pay would have been received if claimants had been working. Underlying the Court of Appeals decision is the theory of economic impact.

## Legislative Policy

In deciding this issue, we look to the expressed declaration of policy of the Michigan Employment Security Act.

MESA § 2; MCLA 421.2; MSA 17.502 is explicit:

"The legislature acting in the exercise of the police power of the state declares that the public policy of the state is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no

fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state."

In *Renown Stove Co v Unemployment Compensation Commission,* 328 Mich 436, 440; 44 NW2d 1 (1950), a unanimous Supreme Court set forth the purpose of the MESA in this manner:

"In brief, the objective sought to be gained is protection against the evils incident to involuntary unemployment and the fostering of social and economic security by the payment of benefits to individuals who have suffered a loss of pay resulting from involuntary unemployment."

With the Legislature and the *Stove Co* Court, we believe this objective to be economically and socially sound. The costs involved are considered part of the cost of doing business and are reflected primarily in the price of the product to the consumer.

The welfare of the employes and the employer are interlocked. Each is dependent upon the other and each is vital to free enterprise and to a free society. Therefore, a balancing of benefits and duties should be the ultimate goal of legislative enactments and labor contracts. It follows that labor and management cannot successfully be true adversaries. It also follows that a balanced, reasonable interpretation of such statutes and contracts should be the goal of this Court.

Therefore, we approach the problem of back-to-work pay in this (and another) factual contest in the spirit of the legislatively pronounced policy towards the "public good and general welfare of the people of this state".

The Michigan Employment Security Act softens the economic burdens of those who through no fault of their own find themselves unemployed. This softening is obtained through the payments of benefits to those unemployed in order that they might maintain purchasing power and limit the social and economic consequences of unemployment.

### *"Layoff"—"Unemployment"—Definitions*

Counsel on both sides couch their respective arguments as if these terms are incompatible. Namely, plaintiffs' "unemployment" theory and claimants' "layoff" theory are presented as alternatives.[3] However, we do not find the theories incompatible and, therefore, not alternate.

Although "layoff" has not been defined in the act or elsewhere[4] by statute or contract, we do find a definition by the United States Bureau of Labor Statistics, *Handbook of Labor Statistics:*

"A 'layoff' is a termination of employment at the will of the employer, without prejudice to the worker. Layoffs may be due to lack of orders, technical changes, or the failure of flow of parts or materials to the job, as needed."

The Missouri Supreme Court in *Irwin v Globe-Democrat Publishing Co,* 368 SW2d 452, 455 (Mo,

[3] Despite the lack of statutory or contractual definition, there is no contest as to the general concept of "layoff". It is undisputed that the claimants were by definition unemployed for exactly three weeks. General Motors maintains that a period of "unemployment" in excess of three weeks is the necessary ingredient to trigger § 27(c)(2)(ii); whereas the claimants contend that a "layoff" in excess of three weeks will satisfy that section.

[4] *See Michigan Employment Security Commission v General Motors Corp,* 32 Mich App 642; 189 NW2d 74 (1971), for general discussion.

1963), defined the term "layoff" in a similar fashion:

"A 'layoff', as distinguished from a discharge, contemplates a period during which a working man is temporarily dismissed, *Fishgold v Sullivan Drydock & Repair Corp,* 154 F2d 785, 788 [CA 2, 1946], and it also refers to that suspension of work or employment during a part or season of the year when business activity is partly or completely suspended [citing cases]. An employee 'laid off' does not have his employment status completely and finally terminated. He ordinarily is entitled to re-employment when the temporary situation calling for the layoff has been corrected or eliminated."

We agree that a "layoff" is a temporary dismissal by the employer which anticipates reemployment and therefore is distinguished from unemployment by reason of discharge, resignation or other permanent termination.

"Unemployment" is defined in MCLA 421.48; MSA 17.552:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate."

### Statutory Construction

Unfortunately, defendants' claims have been buffeted by such a long and severe storm of semantics that the act may have lost its course.

Viewing the subsection (1) from the plain meaning of the words (with punctuation), read in harmony with the act as a whole, (2) from the expressed legislative objective and (3) from a com-

monsense application of the law, the act comes into focus.

(1) First, it is necessary to apply basic English construction. The position of the clause at the beginning of the entire subsection, followed by a colon, renders it the dominant and controlling clause. We have, therefore, the following pertinent provision:

"When an individual has had a period of unemployment: * * * (ii) which commenced with a layoff by an employing unit that continued * * * for more than 3 weeks * * * ."

Because the dominant clause mandates that we consider an individual who has had "a period of unemployment", we must first ascertain when that "period of unemployment" took effect. (All concede that the notice of layoff was received at the end of the shift on Friday, and that a full week's wages was received and that Monday was the next work day.)

Therefore, we look to the definition of "unemployment" as set forth in § 48, which is calculated in terms of "any week" and is based upon "weekly benefit rate". It cannot seriously be argued that claimants were unemployed in the week for which they received full pay. As unemployment benefits are apportioned on the basis of a work week, claimants were unemployed because of a layoff as of Monday, the first work day of the first week of unemployment and extending for three weeks thereafter.

Statutory construction should attempt to give effect to every clause and word of a statute. It is also true that the most basic requirement of legis-

lative intent requires words to be read in light of the general purpose sought to be accomplished by the statute. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), *Melia v Employment Security Commission,* 346 Mich 544; 78 NW2d 273 (1956).

Also, words in a statute should not be construed in the void, but should be read together to harmonize the meaning, giving effect to the act as a whole. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971); *Fowler v Board of Registration in Chiropody,* 374 Mich 254; 132 NW2d 82 (1965); *Presque Isle Twp School Dist v Presque Isle County Board of Education,* 364 Mich 605; 111 NW2d 853 (1961), *In re Chamberlain's Estate,* 298 Mich 278; 299 NW 82 (1941). An amendment, as § 27(c)(2), is generally construed in the context of the act it was designed to amend. *Fowler, supra.*

Using these well recognized rules of statutory construction, the more reasonable reading of § 27(c)(2) requires:

(1) A period of unemployment (in this case, plaintiffs were unemployed at the beginning of the work day on Monday under the definition of § 48),

(a) which commenced with a layoff (plaintiffs were unemployed by reason of a layoff which commenced the "period" of unemployment on Monday),

(b) that continued for more than three weeks. (Because we are speaking of a "period of unemployment", the condition of unemployment by layoff must continue three weeks from the Monday when the "period" began.)

Such a construction is mandated by the words themselves (and as they are punctuated) as read in

harmony with the rest of the act to the end that the purpose of the Legislature is effectuated.[5]

(2) The sentence construction above is not only grammatically correct but harmonizes with the remainder of the act. Understandably, "layoff" is not defined in the act because the act speaks to "unemployment". The express purpose of MESA is to provide "benefits for periods of *unemployment* * * * thus maintaining purchasing power and limiting social consequences". The subsection in question therefore must be construed to further that purpose.

Even attorney for the claimants declares in a 1972 law review article[6] that the subsection was designed to compensate "unemployed individuals" who are ineligible for employment compensation.

Perhaps the most concrete argument is made by the 1974 amendments to the Employment Security (Unemployment Compensation) Act.

Because the one week waiting period was abolished, the back-to-work compensation provided in the subject subsection also was abolished. MCLA 421.27a; MSA 17.529(1) provides for the transition. The provisions of former subsection (ii) remain the same but the last sentence disposes of such claims in these words:

"No benefits payable in accordance with this section shall be paid for *any week of unemployment* beginning on or after February 2, 1975."

The terminology is consistent with the remainder

---

[5] Although § 27(c)(2) is not artfully drafted, reading "layoff" as the form of unemployment addressed in this subsection does not render any part of the section nugatory.

[6] Rossen, *Unemployment Compensation, 1971 Annual Survey of Michigan Law,* 18 Wayne L Rev 549 (1972).

of the act and refers to a "week of unemployment".

(3) It has been urged upon us to accept the date when notice of a layoff was received as the date when the "period" of unemployment began—in other words as the triggering date from which we count the three weeks necessary for back-to-work pay.

It is true that notice could have been delivered before work on Monday instead of on Friday after work, but this seems a foolish extreme of hairsplitting.

Section 68 of the controlling GM-UAW contract provides:

"The Management of each plant will, whenever possible, give at least twenty-four (24) hours' notice prior to layoff to the employees affected."

It might be argued that plaintiff could have specifically stated in the notice that the layoff was to commence on Monday. Although this is true, there was no practical purpose to be served. Saturday and Sunday were not working days, so such a notice would have been of no benefit to anyone and a lack of such resulted in no prejudice. We would not judicially impose a useless exercise upon the employer. Claimants only benefited from prior notice.

In addition, GMC argues:

"The comprehensive labor agreement between General Motors and the International Union, UAW, shows that the parties have agreed that employes may not be considered to be on layoff status on any Saturday or Sunday. For example, under the holiday provisions of the Agreement, employes laid off during the work week prior to a holiday are entitled to be paid for such

holiday. (Paragraph 208 of December 15, 1967, Agreement.) As a matter of fact, General Motors and the UAW have agreed in their interpretation of this provision that notification to employes at the end of a shift on Friday that they are being laid off is in reality a layoff effective the following Monday."

Consistent with that argument and lending weight to it are the forms signed by claimants and entitled "Registration for Sub-benefits (Pursuant to Agreement between General Motors Corporation and UAW)." These forms claim the "last day scheduled to work" as Friday and "the layoff period beginning with my first day of layoff" as Monday. At least at that point defendants claimed the first day of layoff pursuant to the agreement as Monday.[7] By any name, the commencement of the economic impact took place on a Monday in each case—the first day when no wages or benefits were earned or received.

## MESC

The Attorney General, for Michigan Employment Security Commission (MESC), argues:

"It is submitted that the courts may not substitute

[7] In Wayne Circuit Court Case No 41089, *Michigan Employment Security Commission v General Motors Corp and Elma J. Miller,* the court said,

"Because the reduction in force was after the shift on June 19, 1964, a Friday, *it was the procedure and practice of the company in such case to show that their unemployment for lack of work commenced the following week, on Monday, which was the first day they were unemployed.* Therefore, all employes who were separated June 19 and had worked that day were considered to be laid off in a reduction in force during the week prior to the holiday of July 4, and if this was so, they were entitled to receive holiday pay under paragraph 208 of the company-union agreement.

"All of the claimants remained laid off from employment from *(Monday) June 22, 1964, which was actually the first day of layoff,* until some time after July 4, 1964." (Emphasis added.)

their preferred interpretation for those arrived at by the commission in the absence of a finding that the commission's interpretation is unwarranted and without reasonable basis in law."

We do not agree that the courts are so strictly confined by the agency interpretation. It is the responsibility of the judiciary to interpret legislative intent and this responsibility cannot be delegated. We agree with the Court of Appeals that consideration should be afforded to the MESC interpretation of this section. We cannot abdicate our ultimate responsibility.[8]

To this end, we have considered the MESC view of § 27(c)(2), but for the reasons already enunciated we cannot agree as to its validity.

## Conclusion

We find that the computation of time is controlled by the words "period of unemployment * * * which commenced with a layoff:". (§ 27[c] [2].) Unemployment is defined in § 48. Both sections are in furtherance of the goal of relieving the economic impact of involuntary unemployment of a temporary nature brought about by an act of the employer. The economic impact in these claims of employes paid by the hour commenced on the first day when no compensation was earned or paid— Monday.

No use of semantics can change the fact that defendants would have received no further compensation for the week-end. These employes who were paid by the hour would have earned nothing

_____

[8] *Kelly v Secretary of State,* 293 Mich 530; 292 NW 479 (1940). *See also, Lorraine Cab v Detroit,* 357 Mich 379; 98 NW2d 607 (1959); *Ready-Power Co v City of Dearborn,* 336 Mich 519; 58 NW2d 904 (1953); *Howard Pore, Inc v State Commissioner of Revenue,* 322 Mich 49; 33 NW2d 657 (1948).

until the next regular day of work which was Monday.

Nevertheless, it is claimants' position that they should receive not only a full week's pay but also back-to-work benefits. Such an interpretation not only defeats the stated legislative objective but also the proferred objective of a "compromise" to compensate employes for loss of wages. A literal and commonsense reading of the Employment Security Act dictates the finding that defendants are not entitled to back-to-work pay.

The Court of Appeals is affirmed.

## Lawson-Griffith

The specific question arising in these claims is:

When an employe receives notice of layoff after work on a Wednesday and returns to work on a Wednesday four weeks later, and when pursuant to contract he receives short-week benefits of 80% of base pay for the two days not worked in each of the two weeks for which he also received regular pay for three days, is he entitled to back-to-work pay under § 27(c)(2)?[9]

MESC awarded defendants Lawson and Griffith back-to-work benefits. General Motors contends that the awards were erroneous.

Although the Court of Appeals applied the "loss of pay impact" rationale in the Bloomer-Kartsonas-Erves decision, with which we agree, it failed to do so as to these claimants. Instead, it found that any period of unemployment satisfies the first requirement of § 27(c)(2).

The Court rationalized that the "layoff" was

[9] Lawson and Griffith received layoff notices at the end of the shift on July 31, 1968 and returned to work Wednesday, August 28, 1968.

four weeks and because there was some period of "unemployment", the claimants were entitled to back-to-work benefits regardless of the short-week payments already received.

We attribute to the legislative intent a more consistent, less confusing rationale.

General Motors argued that by § 48 definition the claimants were not unemployed in excess of three weeks, but instead were unemployed for exactly three weeks beginning Monday, August 5, and ending Saturday, August 24. This period of unemployment was commenced by an act of the employer laying off the employes without prejudice.

By contract, each was paid 80% of his base pay for the portion of the 40 hour "work week" he did not work. Thus, Lawson and Griffith worked three days of the beginning work week and three days of the last work week and they were paid the 80% for the two days they did not work in each such week. They lost three full weeks of wages.

Claimants argued, as did Bloomer-Kartsonas-Erves, that "layoff" and "unemployment" as used in this section are mutually exclusive terms.

These contentions have been discussed in the prior matter and repetition will serve no purpose.

The period of unemployment did not begin until Monday.

By definition an employe is not entitled to compensation for every and any day he does not work. For example, if a worker ceased working for an employing unit on Tuesday, began working for the same or another employing unit on the following Thursday, and his total wages for the week at least equalled his weekly benefit rate, then for purposes of the MESA that worker was not unemployed.

In this case the claimants were unemployed exactly three weeks.[10]

Considering the act as a whole, we note that all benefits and computations therefor are calculated in terms of weeks rather than days. It is consistent that provision be made in the contract to compensate for that part of a 40-hour work week remaining with no work. The contractual provision for short week pay in these cases emphasizes the beneficial effect of the agreement. Regular wages for the three days worked placed claimants beyond the maximum for unemployment compensation during that particular week. Nevertheless, they received short-week pay of $90.89 and $84.01 in addition to the three days at full wages for each of those weeks. Therefore, the respective additional sums received were each higher than the one back-to-work payment being sought and the claimants gain, rather than lose.

In any event, the "loss of pay impact" was not effective in the two disputed weeks.

Because unemployment is defined in the Employment Security Act, that definition necessarily limits the application of "layoff" as used in the act to the commencing of "period of unemployment". It also is consistent with the stated objective of the act "to provide benefits for periods of unemployment". In this context, the defendants were not in a period of unemployment because of layoff in excess of three weeks. Therefore, they are not entitled to back-to-work benefits. One must credit the Legislature and the contract negotiators with some sense of economics. It is unlikely that the Legislature anticipated such a play on words. As it

---

[10] This point is uncontested. What is contested is whether the claimants were "laid off" in excess of three weeks and the relevance of that determination.

was, we suspect that they relied upon the plain meaning of the words read in harmony with the objective and remainder of the act and a common-sense approach by all of us to a well-intended and balanced legislative enactment.

Claimants "lost pay" for exactly three weeks and so are not entitled to back-to-work pay in addition to unemployment compensation and short-week benefits.

The Court of Appeals is reversed.

FITZGERALD and LINDEMER, JJ., concurred with COLEMAN, J.

LEVIN, J., took no part in the decision of this case.

RYAN, J. I agree with my Brother WILLIAMS' observations that:

"the terms 'layoff' and 'unemployment' have substantially different meanings and are used in different contexts—'layoff' deals with the *relationship* of an employee with his employer while 'unemployment' is a *condition* of the employee."

The characteristic of the "relationship" is that the employee is not employed by his employer because of work shortage, plant shutdown or the like, and not because of some wrongful act on the part of the employee which would justify a discharge. *Irwin v Globe-Democrat Publishing Co,* 368 SW2d 452 (Mo, 1963); *Fishgold v Sullivan Drydock & Repair Corp,* 154 F2d 785 (CA 2, 1946).

Consequently, an employee's layoff commences when this particular "relationship" with his employer—that of the employee's "unemployment" due to lack of available work—begins. Because

§ 48[1] of the Employment Security Act explicitly defines the term "unemployment", it is not necessary to interpolate from § 28(1)(a)(1)[2] and conclude, as does Justice Williams, that a layoff must be measured from the last day worked. I agree with Justice Coleman, therefore, that an employee's layoff begins when he becomes unemployed within the meaning of § 48.

I do not agree, however, with Justice Coleman's statement that "the more reasonable reading of § 27(c)(2)[3] requires: (1) A period of unemployment * * * (b) that continued for more than three weeks." The statutory phrase in issue in this appeal, § 27(c)(2)(ii), states:

"When an individual has had a period of unemployment * * * (ii) which commenced with a layoff by an employing unit *that continued with such employing unit* for more than 3 weeks * * * ." (Emphasis added.)

The language of the statute indicates that the three-week period refers to the time during which the employee is not employed by his initial "employing unit". The relevant time period is not tolled merely by the employee's return to work, but by his return to work "with such employing unit". Consequently, as Justice Williams observes, "it is possible for an employee to be 'laid off' but not 'unemployed' ". That is, an employee may obtain temporary work and thereby no longer be unemployed within the meaning of § 48, but until he returns to work with his initial employing unit, he is still laid off.

I would hold, therefore, that for the purposes of § 27(c)(2)(ii), an employee's layoff begins when he

---

[1] MCLA 421.48; MSA 17.552.

[2] MCLA 421.28(1)(a)(1); MSA 17.530(1)(a)(1).

[3] MCLA 421.27(c)(2); MSA 17.529(c)(2).

first becomes "unemployed" within the meaning of § 48 with respect to his initial employer and continues until the employee is no longer "unemployed" with respect to such initial employer.

Section 48 provides in pertinent part:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate."

Bloomer and Kartsonas were notified of their layoff at the end of the regular work day on Friday, August 2, 1968 and returned to work with General Motors on Monday, August 26, 1968. Erves received notice on Friday, July 5, 1968 and returned to work on Monday, July 29, 1968. These three employees became "unemployed" within the meaning of § 48 with respect to their initial employer, General Motors, due to plant shutdown, and therefore became "laid off" as of the work week beginning the following Monday. They became re-employed by General Motors exactly three weeks later. Consequently, they are not entitled to benefits under § 27(c)(2).

Lawson's and Griffith's last day worked was Wednesday, July 31, 1968; they returned to work on Wednesday, August 28, 1968. They each were paid 80% of base pay for the two days not worked during the first and last week. During those weeks "the remuneration payable to [them]" was not "less than [their] weekly benefit rate". Their layoff commenced, therefore, when they became unemployed with General Motors—on Monday, August 5, 1968—and terminated when they were re-employed by General Motors, which according to § 48

was the week beginning Monday, August 26, 1968. They were not laid off in excess of three weeks and, therefore, are not entitled to back to work benefits under § 27(c)(2).

I would affirm the Court of Appeals regarding the claims of Bloomer, Kartsonas and Erves, and reverse the Court of Appeals regarding the claims of Lawson and Griffith.

WILLIAMS, J. The present action calls upon this Court to construe the "back-to-work" benefits provision of the MESA[1] and particularly the following language contained in § 27(c)(2): "a period of unemployment * * * (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks * * * ".

In this case leave to appeal was granted to consider specifically:

(1) Whether a laid-off employee whose last day of work was Wednesday, July 31, 1968, and who returned to work on Wednesday, August 28, 1968 four weeks later, but who, pursuant to his employment contract, had received "short-week" benefits for the weeks ending August 3, 1968 and August 31, 1968, is entitled to back-to-work benefits under § 27(c)(2) of the MESA (Claim of Lawson) and;

(2) Whether a laid-off employee whose last day of work fell on a Friday and who returned to work three weeks and two days later is entitled to back-to-work benefits under § 27(c)(2) of the MESA (Claim of Bloomer).

We answer both questions in the affirmative.

I—FACTS

During the summer of 1968 thousands of work-

---

[1] 1967 PA 254; MCLA 421.27(c)(2); MSA 17.529(c)(2). This Court also has been called upon to construe § 27(c)(2) in *Ford Motor Co v Jackson,* 395 Mich 578; 236 NW2d 449 (1975).

ers who had been temporarily laid off by the major auto manufacturers in connection with production shutdowns for annual model changes sought benefits under the "back-to-work" payment provision of the MESA. This provision had been recently "liberalized" by amendment in 1967.[2] From these numerous claims, test cases were selected by the Michigan Employment Security Commission (the Commission) based upon recommendations made by the employer's Unemployment Compensation Council. These cases were litigated in an effort to ascertain the meaning of the 1967 version of the back-to-work payment provision. Two of these test cases, the claim of Billy Joe Lawson and the claim of Elmer Bloomer, are now before us in the instant action.

Claimant Lawson's last day of work was Wednesday, July 31, 1968 and he returned to work on August 28, 1968, four weeks later. For the weeks ending August 3 and August 31 he was paid short-week benefits pursuant to art I, § 2 of the Supplemental Unemployment Benefit Agreement (SUB) between GM and the UAW. The SUB agreement provided that such payments were to be made if the hours of employment made available by GM did not total 40 hours and were to be paid in the amount of the difference between the available hours and 40 hours at 80% of the regular hourly rate.

The Commission ruled Lawson eligible for unemployment compensation. It found the week ending August 10, 1968 to be his waiting week and awarded unemployment compensation benefits of $76 per week for the weeks ending August 17 and

_____

[2] 1967 PA 254; MCLA 421.27(c)(2); MSA 17.529(c)(2). In 1974 the Legislature removed the requirement of the "waiting week" and repealed the back-to-work benefit provision. 1974 PA 104.

24 of 1968. Subsequently, Lawson was awarded $76 in back-to-work benefits for the week ending August 24, 1968.

Claimant Bloomer was informed by his supervisor that Friday, August 2, 1968 would be his last day of work. He returned to work three weeks and two days later on August 26, 1968. He filed and qualified for unemployment compensation. The Commission found the week ending August 10, 1968 to be his waiting week and awarded him benefits of $63 for the weeks ending August 17 and 24 of 1968. The claimant subsequently sought and received a back-to-work payment of $63 for the week ending August 24, 1968.

The MESC's award of back-to-work benefits to Lawson and Bloomer was affirmed by the hearing referee, the appeal board, and the circuit court. Lawson's right to back-to-work benefits was also upheld by the Court of Appeals. However, with regard to Bloomer's claim the court split 2 to 1 with the majority applying an "economic impact test" and holding that he was not entitled to receive back-to-work benefits. *General Motors Corp v Erves*, 47 Mich App 591; 209 NW2d 713 (1973). We granted leave on September 28, 1973. 390 Mich 782.

## II—Prior "Back-to-Work" Benefit Provisions

The back-to-work benefit was added to the MESA by a 1954 amendment.[3] It was designed to encourage laid-off employees to search for work with "another employer" by rewarding those who obtained temporary employment during the period of the layoff.[4] This 1954 version of the back-to-work payment provision required that:

---

[3] 1954 PA 197; MCLA 421.28; MSA 17.530.

[4] *See* concurring opinion of Justice, then Judge Levin in *Employ-*

1. "[the individual has] served a waiting period of 1 week unemployment in which he was eligible for, and entitled to, benefits in all other respects"

2. "the individual has been laid off by his most recent employer indefinitely, or for a definite period of more than 4 weeks; and"

3. "the individual has accepted and commenced suitable, full-time employment with another employer within the first 4 calendar weeks following said lay off."

In 1965 the 4-week period in which to obtain employment was expanded to 13 weeks.[5]

### III—Interpretation of 1967 Back-to-Work Benefit Provision

In 1967 a new back-to-work payment provision was enacted as § 27(c)(2) of the MESA. Section 27(c)(2) provided:

"When an individual has had a period of unemployment: (i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week, (ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and (iii) which has been terminated by his accepting and engaging in fulltime work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit, such individual shall be paid, for the most recent week in such period for which benefits are payable or were paid to him or for which he was entitled to credit for a waiting week, an amount equal to his currently applicable weekly benefit rate in addition to any benefits otherwise payable or paid to him for such week. Benefits shall be payable under this paragraph only for 1 week in an individual's benefit year and only to the

*ment Security Commission v General Motors Corp,* 32 Mich App 642, 650–651; 189 NW2d 74 (1971).

[5] 1965 PA 281; MCLA 421.28; MSA 17.530.

extent that the individual is otherwise entitled to benefits under subsection (d) of this section. An individual shall be deemed to be engaged in full-time work for an employing unit if he has earned with such employing unit within any period of 7 consecutive days commencing within such 13 week period an amount equal to his currently applicable weekly benefit rate. To be eligible for benefits under this subsection, an individual shall file therefor within 13 calendar weeks after the end of the week for which benefits are payable in accordance with this subsection."

This version, which is the subject of the present action, was designed as a compromise in response to labor's efforts to eliminate the requirement of a waiting week—the week in which "unemployed individuals" are ineligible for unemployment compensation.[6] Section 27(c)(2) was designed to compensate for the loss of compensation during the required waiting week by allowing certain—but not all—unemployed individuals to receive benefits in the form of back-to-work payments.

Absent from the 1967 back-to-work payment provision was the requirement that the laid-off employee actively search for work and that the employee could only qualify by obtaining work with another employer.

Thus the 1954 and the 1967 back-to-work payments provisions differed substantially not only in language but in purpose as well.

Section 27(c)(2) sets forth three basic conditions which must be met in order to qualify for back-to-work benefits. An individual must have had a "period of unemployment":

"(i) for which he has been paid benefits for 1 or more weeks or has received credit for a waiting week,

---

[6] Rossen, *Unemployment Compensation, 1971 Annual Survey of Michigan Law,* 18 Wayne L Rev 549 (1972).

"(ii) which commenced with a layoff by an employing unit that continued with such employing unit for more than 3 weeks, and

"(iii) which has been terminated by his accepting and engaging in full-time work with any employing unit within the 13 weeks immediately following his last week of employment with such employing unit * * * ."

There is little problem grasping the meaning of the first and third conditions. Section 27(c)(2)(i) requires that the period of unemployment last one or more weeks in the form of either the waiting week or one or more weeks in which unemployment compensation is received. Section 27(c)(2)(iii) requires that the individual resume work within 13 weeks from the date the layoff commenced.

However, the meaning of § 27(c)(2)(ii) has been the subject of some debate and is the dispositive question before us. The controversy focuses on two questions: one, does the phrase "more than 3 weeks" refer to the period of "layoff" or of "unemployment", and two, is a "layoff" merely a type of "unemployment" such that § 27(c)(2)(ii) requires both a period of "layoff" and "unemployment" which continues for "more than 3 weeks"?

Concerning question one, the reference in § 27(c)(2)(ii) to "more than 3 weeks" pertains to the period of the "layoff" rather than to the period of the "unemployment". Such a conclusion is supported by a normal reading of the statute.

First, limited to its essential language, the provision in question reads as follows: "a period of unemployment * * * which commenced with a layoff * * * that continued * * * for more than 3 weeks". It is evident that the requirement of "more than 3 weeks" relates to the period of the layoff not the period of the unemployment. Circuit

Judge Ronald L. Olzark was correct when he concluded that:

"It is a general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which would require a different interpretation *(Kales v Oak Park,* 315 Mich 266 [23 NW2d 658 (1946)]). In this instance the modifying clause *(i.e.* that continued with such employing unit for more than three weeks) is confined to the last antecedent *(i.e.* layoff) as I can see nothing in the subject matter or dominant purpose which requires a different interpretation."

Second, if § 27(c)(2)(ii) is read as requiring a period of "unemployment" that continues "for more than 3 weeks", it would render meaningless § 27(c)(2)(ii) which requires that the individual have a period of "unemployment" measured by *one* or more weeks for which he has received unemployment compensation or measured by *the week* for which he receives credit as a waiting week. We would thus have (i) requiring a period of unemployment of one or more weeks and (ii) requiring a period of unemployment continuing for three or more weeks. This would be contrary to the rule of statutory construction that effect must be given to every clause and word of the statute and that one portion may not be construed so as to render another portion nugatory or of no effect. *Melia v Employment Security Commission,* 346 Mich 544, 562; 78 NW2d 273 (1956). See also *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971); *Attorney General ex rel Zacharias v Board of Education of Detroit,* 154 Mich 584, 589; 118 NW 606 (1908).

As concerns question two, a "layoff" is not just a

particular form of "unemployment". "Unemployment" is specifically defined in the statute and therefore, has a special meaning. "Layoff" is not defined. But layoff is not just a special form of "unemployment".

"Unemployment" is defined by the statute in § 48 as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no remuneration is payable to him, or with respect to any week of less than full-time work if the remuneration payable to him is less than his weekly benefit rate." MCLA 421.48; MSA 17.552.

The critical factors for determining if one is in a state of "unemployment" is whether the individual has received remuneration or performed any services during the weeks in question.

The term "layoff," unlike "unemployment", is nowhere defined in the MESA. Absent a statutory definition we are constrained to interpret it in accordance with its ordinary usage and must presume it was used in its normally accepted meaning. *American Telephone & Telegraph Co v Employment Security Commission,* 376 Mich 271, 279; 136 NW2d 889 (1965); *People v Powell,* 280 Mich 699, 703; 274 NW 372; 111 ALR 721 (1937); see *Employment Security Commission v General Motors Corp,* 32 Mich App 642, 647; 189 NW2d 74 (1971). The United States Bureau of Labor Statistics defines a layoff as follows:

"A 'layoff' is a termination of employment at the will of the employer, without prejudice to the worker. Layoffs may be due to lack of orders, technical changes, or the failure of flow of parts or materials to the job, as needed."

A layoff is not a termination of the relationship between the employee and his employing unit but rather a change in the status of that relationship whereby, at the will of the employer, the employee for a fixed or indefinite period suspends his labors *for his employer* because no work is available. See *Employment Security Commission v General Motors Corp, supra.*[7]

Thus the terms "layoff" and "unemployment" have substantially different meanings and are used in different contexts—"layoff" deals with the *relationship* of an employee with his employer while "unemployment" is a *condition* of the employee.

Judge, now Justice, Levin drove home the point in his concurring opinion in *Employment Security Commission v General Motors Corp, supra,* 653, that under § 27(c)(2) an employee's period of layoff is unaffected by whether or not he is employed temporarily by another employer:

"The restructuring of the back-to-work benefit in 1967 so that it can be earned without regard to whether the laid-off employee seeks or obtains employment during the layoff with 'another' employer, provided he is laid off for at least three weeks and employed within thirteen weeks by some employer, including by the employer who laid him off, achieved a kind of parity for some laid-off employees unable to obtain temporary

---

[7] In *Employment Security Commission v General Motors Corp, supra,* 648, the Court of Appeals drew a distinction between a "layoff" and a "discharge" citing the case of *Irwin v Globe-Democrat Publishing Co,* 368 SW2d 452, 455 (Mo, 1963), which held that:

"A 'layoff', as distinguished from a discharge, contemplates a period during which a working man is temporarily dismissed, *Fishgold v Sullivan Drydock & Repair Corp,* 154 F2d 785, 788 [CA 2, 1946], and it also refers to that suspension of work or employment during a part or season of the year when business activity is partly or completely suspended [citing cases]. An employee 'laid off' does not have his employment status completely and finally terminated. He ordinarily is entitled to re-employment when the temporary situation calling for the layoff has been corrected or eliminated."

employment, who arguably are in greater need of the
additional benefit than a laid-off employee who obtains
temporary employment."

As Justice LEVIN suggests, it is possible for an
employee to be "laid off" but not "unemployed".
Justice LEVIN also made the distinction between
the terms "layoff" and "unemployment" when as a
Court of Appeals Judge writing for the court in
this case below he held that Lawson was entitled
to back-to-work benefits. *General Motors Corp v
Erves*, 47 Mich App 591, 596–598; 209 NW2d 713
(1973).

## IV—CLAIM OF LAWSON

Lawson was credited with a waiting week, and
in addition he received unemployment compensa-
tion for the following two weeks. He also returned
to work well within the 13-week deadline. He thus
met the requirements set forth in §§ 27(c)(2)(i) and
(iii)—the parties have not argued otherwise.

It is uncontested that Lawson was laid off, that
his last day of work was on Wednesday, July 31,
1968 and that he did not return to work until
Wednesday, August 28, 1968, exactly four weeks
later. During this period Lawson suspended his
labors for his employer and did not resume work-
ing for his employer until once again work was
available four weeks later. Consequently, Lawson
must be considered laid off for the entire four
week period in question. Since § 27(c)(2)(ii) requires
that the layoff, not the period of unemployment,
continue for more than three weeks, it is readily
apparent that Lawson has satisfied the require-
ments contained in § 27(c)(2)(ii) as well.

Having met each of the conditions set forth in

§ 27(c)(2), claimant is entitled to back-to-work benefits.

## V—CLAIM OF BLOOMER

The principal question regarding Bloomer's claim centers on when his layoff commenced—was it Friday, August 2, the last day worked or Monday, August 5, the next regularly scheduled work day? In this case the precise date is critical because if the layoff is held to have commenced as of Friday the 2nd then Bloomer's layoff lasted three weeks and two days and thus he meets the requirement of § 27(c)(2)(ii) that the layoff continue for "more than 3 weeks". However, if it is held that the layoff began on Monday the 5th, then Bloomer's layoff was precisely three weeks in duration and consequently he would be ineligible for back-to-work benefits.

Upon examining the MESA to determine which date other sections of the act treat as the first day of a layoff and applying standard rules of statutory construction, we arrive at the same conclusion reached by the commission, the hearing referee, the appeal board, the circuit court, and the dissenting judge in the Court of Appeals, *i.e.* that a layoff commences as of the last day worked for the purpose of determining eligibility for back-to-work benefits.

The 1967 back-to-work pay provision was a compromise reached in response to labor's efforts to eliminate the required waiting week. As a result of this compromise some employees would be compensated for the economic effects of a waiting week in which no benefits were awarded by qualifying for back-to-work benefits. However, that group was restricted to those individuals who were laid off "for more than 3 weeks". We can surmise

that the "more than 3 weeks" requirement was included to prevent employees subjected to layoffs of short durations from qualifying. However, knowledge of this intent, without more, is of little assistance in determining with any certainty whether the legislators envisioned layoffs beginning as of the last day worked, the next regularly scheduled working day, or some other day. This is so because there is no record how or why the legislators arrived at "more than 3 weeks" as the statutory minimum.

In other words we know the legislators wanted to exclude employees subject to short layoffs, but we do not know how "short" a short layoff the legislators had in mind.

The language of § 27(c)(2)[8] provides little or no clue to legislative intent. The term "layoff" is nowhere defined in the act. The term "layoff", however, also appears in § 28(1)(a)(1).[9] This section pertinently provides:

> "The requirements that the individual must register for work and must seek work may be waived by the commission if the individual is *laid off* and the employer who *laid him off* notifies the commission in writing that the *layoff* is temporary and that work is expected to be available for the individual within a declared number of days, not to exceed 45 calendar days following *the last day the individual worked."* (Emphasis added.)

This language suggests that, at least for purposes of the waiver provision, the last day worked is the critical date for measuring the first 45 days of the layoff. It would be confusing to have the layoff commence for purposes of § 28(1)(a)(1) as of

---

[8] Quoted in part III above.

[9] MCLA 421.28(1)(a)(1); MSA 17.530(1)(a)(1).

the last day worked and have the layoff for purposes of § 27(c)(2) commence as of some other date. The more reasonable construction would be to hold that the first day of layoff would be the same for both sections, that day being the last day worked. This reasoning is, of course, not conclusive, and the opposite result may be argued because § 27(c)(2) was not equally specific. That is why the following standard rules of construction should be dispositive.

An important rule of construction requires that:

" 'The executive interpretation given a law by officials charged with its administration must be presumed to have been known to the legislature so that such construction would be carried with it and sanctioned when the legislature amends the statute and reenacts the language so construed.' " *Melia v Employment Security Commission,* 346 Mich 544, 565; 78 NW2d 273 (1956).

See also *Chrysler Corp v Smith,* 297 Mich 438, 452; 298 NW 87; 135 ALR 900 (1941); *Commerce-Guardian Trust & Savings Bank v Michigan,* 228 Mich 316; 200 NW 267 (1924). In this instance the Michigan Employment Security Commission, the executive agency charged with the enforcement of the MESA, had an established policy *prior to* the adoption of the 1967 version of the back-to-work payment provision that the layoff was measured as of the last day worked for purposes of filing and reporting.[10]

Under the rule set forth in *Melia, supra,* it is proper to conclude that when the Legislature enacted § 27(c)(2) in 1967 using the phrase "a layoff * * * that continued * * * for more than 3 weeks" it intended that the layoff period should be measured from the last day worked as was the practice

---

[10] *See* MESC Regulations 210, parts 2.B; 2.C; 3.A; 3.B.

with the MESC at the time of the section's passage.

A related rule of statutory construction is that:

" 'the construction placed upon statutory provisions by any particular department of government for a long period of time, although not binding upon the courts, should be given considerable weight.'

"Said principle was recognized by the supreme court of the United States in *United States v Jackson,* 280 US 183, 193 (50 S Ct 143, 74 L Ed 361 [1930])." *Melia v Employment Security Commission, supra,* 565.

Consistent with the policies it maintained prior to the enactment of the 1967 amendments, the MESC has treated the last day worked as the first day of the layoff for purposes of back-to-work payment eligibility.[11]

The MESC Manual, part 5648, lists the following example to illustrate who may qualify for back-to-work benefits:

"D. Examples:

"1. Layoff for More than 3 Calendar Weeks—Recalled to Same Employer. Claimant was laid off from Chrysler Corp. on Friday, 8-25-67, and filed a claim on Tuesday, 8-29-67. Claimant returned to work on Monday, 9-18-67, with Chrysler Corp. and had earnings in excess of his weekly benefit rate. Claimant received credit for a waiting week and 2 compensable weeks. Back-to-work payment for w/e 9-16-67 *can* be made as he was on a layoff for more than three calendar weeks and *accepted* and engaged in full-time work within 13 weeks."

---

[11] MESC Manual, part 5648 C 3. The MESC recognizes situations when the notice of the layoff will come later than the last day worked such as when an employee is on a leave of absence and he is notified that he is being laid off as of a certain date. In order to protect the employee in these special circumstances (which are not present in either Bloomer's or Lawson's case) the MESC Manual, part 5648 C 3 provides that the layoff commences as of the last day worked or the date of notification, whichever is later.

Except for the actual dates of the layoff, the fact situation set forth in this example is the same as was present in Bloomer's.

Finally on numerous occasions we have said that as the MESA is remedial in nature it must be construed liberally so as to allow benefits and any disqualifying provision must be construed narrowly. *Linski v Employment Security Commission,* 358 Mich 239, 245; 99 NW2d 582 (1959); *General Motors Corp v Employment Security Commission,* 378 Mich 110, 117; 142 NW2d 686 (1966); *Copper Range Co v Unemployment Compensation Commission,* 320 Mich 460, 468; 31 NW2d 692 (1948).

The Court of Appeals held that Bloomer's layoff began with his next regularly scheduled work day, *i.e.* although the worker's last day was Friday his layoff began Monday and the Saturday and Sunday after his work terminated were not part of his layoff. Consequently since he returned to work the third Monday thereafter was not laid-off "more than 3 weeks". Their ingenious and respectable judicial reason was that the worker lost no wages until the next work day.

But the practical impact of this reasoning is very special and peculiar. If the worker is laid off any day of the week except Friday he is entitled to count all weekends to determine whether his layoff is for "more than 3 weeks". However, if he is laid off Friday he cannot count the first weekend. Presumably there is no bar to counting the last weekend even if he returns to work on a Monday and even though he presumably loses no wages because he was laid off for those two days.

While the practical application of the "economic impact" reasoning has certain difficulties there are several other problems connected with it.

First, such a test is nowhere found in the stat-

ute. Second, the Court of Appeals appears concerned with preventing windfall compensation when there has been no economic impact. While such concern is correct, the Court looked in the wrong place to see if there had been any impact. Back-to-work benefits were designed to offset the economic impact of the waiting week. Since § 27(c)(2)(i) requires that an employee have one or more weeks of unemployment in the form of a waiting week or a week in which unemployment compensation is received before he is eligible for back-to-work benefits there will be no double compensation. Third, the "economic impact" test as applied by the Court requires in effect that an employee be unemployed before he can be considered laid off. We have earlier discussed that unemployment and layoff have different meanings in § 27(c)(2).

## VI—CONCLUSION

We find that § 27(c)(2)(ii) requires that the period of unemployment commence with a layoff and that the layoff, not the period of unemployment, continue for more than three weeks. Construing the language in this manner we find that both Bloomer and Lawson were laid off for more than three weeks and as they have met the remaining requirements of § 27(c)(2) they are entitled to back-to-work benefits. To the extent the Court of Appeals decision below is inconsistent with these findings, it is reversed. The matter is remanded to the appeal board for further action not inconsistent with this opinion.

No costs, a public question of first impression being involved.

KAVANAGH, C. J., concurred with WILLIAMS, J.